*J. J. E. Anderson* and *R. Lee,* contra.

---

## AUGUSTA FACTORY v. MENTE & COMPANY.

1. Where a written contract between a factory company and a purchaser of cloth provided in express terms that the former should deliver to the latter at a distant city 200,000 yards of cloth of a kind described, and at prices stated, and that 50,000 yards should be delivered weekly, commencing on a specified date, such contract as to the time of delivery was not modified or changed by the fact that on letter heads used in the correspondence between the parties through which the contract was made was certain printed matter, including, among other things, a statement that "All agreements are contingent upon strikes, accidents, and other delays beyond our control."

2. While time is not generally of the essence of a contract, it may become so by express stipulation or by reasonable construction. In this case the presiding judge did not err in holding that time was of the essence of the contract.

3. Where a written contract of the character indicated in the first head-note was made, and the vendor failed to deliver the goods within the time specified therein, if time were not originally of the essence of the contract, the vendee could, by notice to the vendor, fix a reasonable time for delivery, and call upon the vendor to perform within such time. The time thus set, if reasonable, would become essential; and upon failure to make delivery within it, the vendee could treat such failure as a breach, and hold the vendor for damages accruing therefrom.

Argued January 8,—Decided April 19, 1909.

Action for breach of contract. Before Judge Eve. Richmond superior court. July 8, 1908.

Mente & Company brought suit against the Augusta Factory to recover damages for a breach of contract, alleging, that the defendant had contracted to sell them certain cotton goods of two described characters, to be delivered at the rate of 25,000 yards of each, weekly, commencing February 1, 1906, at certain stipulated prices; that it had failed to comply with its contract, and that at the time of the breach the market price at the point of delivery was higher than the price specified in the contract, making a difference of $512.50, for which amount the suit was brought. The defendant denied liability. By consent the case was submitted to the presiding judge to pass upon both the law and the facts, without a jury. The evidence was, in brief, as follows: It was admitted by the defendant that the goods which it undertook to manufacture and deliver to the plaintiffs at New Orleans, to wit, 200,000 yards, commencing February 1, 1906, and to be delivered at the rate of 50,000 yards per week, were not delivered in that time, and that no part of them had been delivered up to March 9, 1906, the day that the plaintiffs went into the market and purchased other goods to take the place of those which the defendant had failed to deliver. It was also admitted that the difference between the contract price of the goods which defendant was to deliver and the market price of the same kind of goods in New Orleans at the time when plaintiffs claimed the goods should have been delivered was $512. The following correspondence between the parties was introduced in evidence: Letter from defendant's president to its agent in New Orleans, dated November 5, 1905, containing the following: "Replying to yours of the 2nd, would say, we enter up order Mente & Co., No. 152, for 100,000 yards 36" 6.50 40x40 at 3¾ c., and 100,000 yards 36" 40x40 6.00 at 4c. 25,000 yards weekly of each, commencing Feb. 1st, delivered in

New Orleans, less 5% 30 days. We do not discount our bills any further than we sell, we had just as soon wait the 30 days for the money as not. You can give this letter to Mente & Co., and say to them to write us an acknowledgment of same; that will be all the contract we require." (It was alleged in the petition and admitted in the answer that the plaintiffs duly acknowledged this letter, thus completing the contract for the goods at the prices named.) Also, a letter from plaintiffs to defendant, dated February 26, 1906, containing the following: "Referring to our contract placed with you through Mr. Kaiser for 200,000 yards 36″ sheeting, we beg to advise that Mr. Kaiser has this day shown us your letter of the 23rd. We appreciate your condition, but at the same time you must appreciate ours. These goods were not bought from you to be sold in cloth, as dry goods people do, but were sold manufactured into bags for the Sugar Refinery. They have not bothered us so far for deliveries, hence have not pressed you for same; but, as you readily understand, they run night and day, and are compelled to have the goods, and we must positively insist upon you getting the goods forward without any further delay. We have given you one month latitude in regard to these goods, and can not wait for them any longer. They must be shipped without delay." The reply to this letter was as follows: "Augusta, Ga., Feb. 28th, 1906. Mente & Co., New Orleans, La. Dear Sirs:—Replying to yours of the 26th: We are going to start to work on your goods either the latter part of this, or the first of next week, and will do the very best we can to make deliveries as rapidly as possible. Rest assured that we are just as anxious to make deliveries as you are to get them, and we are going to do everything in the world we can to get the goods to you. We hope soon to get the labor trouble (with which we have been so much annoyed) settled, and also that the health of our operatives will improve by that time. If you see Kaiser, tell him that we have written you, as he has written us a very urgent letter in your behalf." A letter from plaintiffs to defendant, dated March 2, 1906, containing the following: "We have your letter of Feb. 28th, and beg to state that contents of same are somewhat indefinite. The purchase we made from you of these goods was 50,000 yards weekly, beginning Feb. 1st, and these 200,000 yards should now be delivered. While we granted you an extension of shipment until next

week, it must be understood thoroughly that we can not be limited to 50,000 yards per week, but that you must deliver us at least 100,000 yards of these goods next week, and 100,000 yards the following week, in order that we can comply with our contract here; otherwise we will be compelled to buy material to substitute the best we can, charging you the difference. The reason for this is simply that the trade here has been as patient with us as they possibly can, and are now insisting that deliveries be made." A telegram from plaintiffs to defendant, dated March 9, 1906, as follows: "Can not wait longer must make immediate delivery can buy spot goods one eight cent additional your expense answer," and a telegram from defendant to plaintiffs on the same day, containing the following: "Read red lines on our letter-heads before purchasing any goods for our account as written you we will commence delivering goods next week." A letter on the same day from plaintiffs to defendant, containing the following: "We have your telegram to-day, and beg to state that we have seen and noticed the memorandum printed in red ink on your letter-head, which, as manufacturers ourselves, we fully understand and know the importance of. But in this connection beg to state that you have never given us any notice that you would be or were prevented from fulfilling this contract for reasons given in this notice. On March 2nd we wrote you that it would be agreeable to us to extend shipment a week from that date, which would bring it into March 9th, which is this week, provided you would deliver at least 100,000 yards in this week and 100,000 yards next week. You have not complied with this request, notwithstanding the fact that we have tried to make it clear to you that these goods were sold to the Refinery here, who must have them for bags for shipment of their product, and it is not material that is put on the shelf and jobbed. Your letters have not even given us the slightest information as to what you would definitely ship next week." A letter from defendant to plaintiffs of same date, containing the following: "Your telegram received this morning, and in reply we wire you, as per enclosed confirmation, to read the red lines in our letter-heads as to output, quotations, contracts, etc. Our brokers have no instructions to sell goods otherwise than as those lines plainly state; and every letter we have written you, in fact the letter where we confirmed sale, has these lines on it. As written

you, we expected to commence shipping you goods this week; we started on them, but found they were running a little light, and not wanting to deliver you light weight goods, preferring to wait until we could deliver you what we sold, we did not ship. Upon receipt of this letter, if you want us to continue the contract, say so, and we will proceed to ship you the goods; otherwise we will not; we leave the matter entirely to you. Of course we will ship the goods as soon as we can make them. Our position has been explained fully to you; we have been very scarce of hands, are still, and there is a great deal of sickness among them. We have left no stone unturned to get hands, and this at a considerable loss to us. We await your letter before making any shipment. We notice your letter-heads are similar to ours." Also a letter from plaintiffs to defendant, dated March 13th, reciting facts which they contended made a breach of contract on the part of the defendant, and insisting on their right to damages. The letter-head used by the defendant in its correspondence with the plaintiffs contained the following words printed in red ink: "Quotations subject to change without notice. All agreements are contingent upon strikes, accidents, and other delays beyond our control. Purchaser to take run out of looms, whether quantity is more or less than contract, and must accept what seconds are made at $\frac{1}{4}$c. allowance from price of firsts." The letter-head of plaintiffs employed in writing letters to defendant contained the following printed in red ink: "All contracts taken subject to strikes of work people, fire, loss of goods at sea, or other accidents beyond our control. All quotations subject to change without notice, to market fluctuations, and to goods being unsold. Our responsibility for safe arrival of shipment ceases when we receive a clear receipt from a transportation line." The paymaster of the defendant testified, that, at the time when the contract with the plaintiffs was made, the defendant was short in number of operatives; that unsuccessful efforts were made to get help; that a considerable part of the machinery remained idle; that the total number of spindles in the factory was 36,048, and that the number of those that were idle at different times from January 6 to March 3, covering the period of dealings with the plaintiffs, ranged from 2620 to 9275; and that an epidemic of measles and mumps among the operatives caused the stoppage of the spindles. There was some other testimony as to the capacity of the mill.

The presiding judge entered judgment for the plaintiffs, and re-
fused a new trial. The defendant excepted.

*Joseph B. & Bryan Cumming,* for plaintiff in error.

*William H. Fleming* and *Irvin Alexander,* contra.

ATKINSON, J. One ground of the motion for new trial com-
plained that the court erred in holding and finding, in effect, that
the contract of sale was not modified, as to the time expressed in it
for its completion, by the following words in red lines on the heads
of the letters by which the contract was made: "All agreements
are contingent upon strikes, accidents, and other delays beyond our
control." If a contract in writing is plain and clear and unambig-
uous in its terms, it is not subject to modification by a statement
in a letter-head printed at the top of the paper, which is not incor-
porated into the contract and is inconsistent with it. Even where
a printed form of contract is used but terms are written into it
which are at variance with the printed matter, the writing will con-
trol. As stated in the Civil Code, 1895, §3675, par. 6, "when a
contract is partly printed and partly written, the latter part is enti-
tled to most consideration." The expression, "latter part," as here
used, means the written part. If printed matter which forms a
part of the contract, then, must yield to written terms inconsistent
with the words printed, a fortiori a mere printed statement in a
letter-head, which does not form an integral part of the contract at
all, can not override or modify distinct terms of the contract with
which it conflicts.

In Summers *v.* Hibbard, 153 Ill. 102 (38 N. E. 809, 46 Am.
St. R. 872), a contract was made for the delivery of certain bundles
of sheet-iron at specified times and prices. The vendors failed to
deliver at the times agreed upon. The vendees at a later date bought
other iron for which they were compelled to pay a higher price,
and brought suit for damages against the vendors. The contract
was made by letters passing between the parties. At the top of the
letter-heads of the vendors were the printed words, "All sales sub-
ject to strikes and accidents." It was held: "Printed matter in a
letter-head forms no part of the written letter on the sheet, and will
not qualify an absolute contract which results from an acceptance
of an offer by such letter. . . If a party contracts, uncondition-
ally, to sell and deliver, at a specified time, goods to be made in his
mill, the breakage of his mill will not excuse performance or bar a

suit for damages." Mr. Justice Baker in delivering the opinion said: "The mere fact that appellants wrote their acceptance on a blank form for letters, at the top of which were printed the words, 'All sales subject to strikes and accidents,' no more made those words a part of the contract than they made the other words there printed, 'Summers Bros. & Co. Manufacturers of Box-annealed Common and Refined Sheet-Iron,' a part of the contract. The offer was absolute. The written acceptance which they themselves wrote was just as absolute. The printed words were not in the body of the letter or referred to therein. The fact that they were printed at the head of their letter-heads would not have the effect of preventing appellants from entering into an unconditional contract of sale."

In the present case the defendants wrote to their broker in New Orleans, authorizing him to sell 200,000 yards of sheeting, of two kinds described, to be delivered "25,000 yards weekly of each, commencing Feb. 1st, delivery in New Orleans." He was instructed to give defendant's letter to the plaintiffs and say to them that they might write an acknowledgement, and that would be all the contract defendant required. It was alleged by the plaintiffs and admitted by the defendant that the former did duly acknowledge the letter, and thus complete the contract for the goods at the prices named. This closed a distinct and unambiguous contract. It fixed the time and place of delivery. It needed no aid from circumstances to construe it or arrive at its meaning in those respects. Neither was there any question of bringing home notice of some fact by means of printed statements. A positive statement that goods sold shall be delivered at a time specified in the written contract is not in harmony with a statement that "All agreements are contingent upon strikes, accidents, and other delays beyond our control." One declares definitely that delivery shall be at a time mentioned; the other, that delivery shall not necessarily be at a definite time, but shall be contingent, not only upon strikes, but also upon accidents and other delays beyond the control of the vendor. The written agreement was specific; the printed notice declared that the time of delivery might be contingent and indefinite. This is not construction; it is modification. If the written statement of the time of delivery is to be made subject to modification by other writing or printing, at least the modifying statement should be embodied

or referred to in the contract itself, and not be made to depend upon mere printed matter forming part of a letter-head. Sturm v. Boker, 150 U. S. 312, 326 (14 Sup. Ct. 99, 37 L. ed. 1093).

2. Another ground of the motion for a new trial alleged that the court erred in holding, in effect, and rendering a judgment accordingly, that the expressed time for the completion of a contract was of the essence of the contract, it being contended that the evidence showed that the defendant had not abandoned the contract, but was preparing to carry it out in a reasonable time when the plaintiffs withdrew from it. To this contention we can not assent. Where a contract for the sale of personal property states a time when delivery is to be made, it is matter of construction as to whether the time for delivery is of the essence of the contract so that damages may be recovered for a failure to comply therewith. If the contract is clear and without ambiguity, latent or patent, the construction is for the court. In proper cases where there is a question of fact involved, it is for the jury. Civil Code, 1895, §§ 3675 (1, 8), 3672. In this case the judge acted both as judge and jury. Did he err in deciding that time was of the essence of this contract? The contract was for the sale of 200,000 yards of cotton goods by a factory to purchasers in a distant city. It was specified that 50,000 yards should be delivered each week, commencing February 1st, at stated prices, with payment at 30 days, or 5 per cent. discount for cash. It might well be inferred that it was important to a purchaser of such a quantity of cloth to have it arrive as specified, both in order to prepare for its reception and storage or use and to provide for payments in the time and manner stated; and that this was in contemplation of the parties. It might make a very material difference whether a merchant should receive and be prepared to handle 50,000 yards of cloth ordered perhaps for some special purpose each week, and commencing at a specified date, or whether he should have 200,000 yards of the cloth delivered to him in one bulk a month or more thereafter, or in installments commencing some six weeks after the proper time and delivered according as the vendor found himself able to meet the contract. It may also be that a merchant desires, during the season when certain goods are salable, to have them ready for delivery to his customers, or that he may have contracts to make deliveries. If such were the case, it would ill suit his purpose to

have goods suitable to or salable during a certain season only, and ordered to be delivered in installments at fixed times during that season, delivered to him in a single lump or shipment at a much later period or after the entire season was over. If recourse is had in the case before us to the correspondence between the parties, the possible injury from extended delay which has thus been hypothetically stated would apparently have resulted to the plaintiffs. In one of their letters to the defendant it was said that these goods were not bought from the defendant to be sold in cloth as dry goods people do, but were sold manufactured into bags for a sugar refinery, and that, as the refinery operated night and day, it was compelled to have the goods. And in another letter they stated to the defendant that the latter had not complied with their request to make the shipments, although the plaintiffs had tried to make it clear to the defendant that these goods were sold to the refinery at the place of delivery, and that the latter were obliged to have them for bags for shipment of their product, and that it was not material to be put on the shelf and sold in lots. See, in this connection, *Savannah Ice Co.* v. *American Refrigerator Co.,* 110 *Ga.* 142 (35 S. E. 280) ; *Branch* v. *Palmer,* 65 *Ga.* 210; *Henderson Elevator Co,* v. *North Ga. Milling Co.,* 126 *Ga.* 279 (55 S. E. 50) ; *Gude & Walker* v. *Bailey Co.,* 4 *Ga. App.* 226 (61 S. E. 135) ; Norrington v. Wright, 115 U. S. 188 (6 Sup. Ct. 12, 29 L. ed. 366) ; Cleveland Rolling Mill Co. v. Rhodes, 121 U. S. 255 (7 Sup. Ct. 882, 30 L. ed. 920) ; McGrath v. Gegner, 77 Md. 331 (26 Atl. 502, 39 Am. St. R. 415). The cases in which contracts for purchases of real estate have been held not to be forfeited because of failure to pay the purchase-price at the date named therefor, in the absence of anything in the contract making time of the essence thereof, and where the payment of interest has been held, under the circumstances of different cases, to be a sufficient compensation for the failure to pay on the exact date when due, are in no way in conflict with what is here ruled. "Time is not generally of the essence of a contract; but, by express stipulation or reasonable construction, it may become so." Civil Code, § 3675 (8). But under the facts in this case the judge did not err in finding that time was of the essence of the contract involved. The statement in the opinion of Mr. Justice Gray in Norrington v. Wright, supra, that, "In the contracts of merchants, time is of the essence," was not laid down as

an absolute rule regardless of what the contract itself might show the intention of the parties to be. This clearly appears from the headnote, in which it is stated that, "In a mercantile contract, a statement descriptive of the subject-matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty, or condition precedent, upon the failure or non-performance of which the party aggrieved may repudiate the whole contract."

3. If it were not clear that time was originally of the essence of the contract, nevertheless the judge was authorized to find that the vendees from time to time urged compliance and finally fixed a time, after that specified in the contract, within which they insisted that delivery of the goods should be made, stating the necessity therefor, and that if delivery should not be made within that time, they would be .compelled to buy material in lieu of that which the vendor had contracted to deliver. If time was not of the essence originally, still the vendor did not have the right indefinitely to postpone compliance, and when the vendees, after a considerable delay, fixed a definite time in advance within which delivery would have to be made, and notified the vendor of that fact, if the time set was reasonable, it was incumbent on the vendor to meet such reasonable demand; and if it failed to do so, the vendees were authorized to treat such failure as a breach of the contract. In Parker *v.* Tharold, 16 Beavan, 59, Sir John Romilly, Master of the Rolls, said (on p. 71): "It is, I consider, the undoubted law of this court, that although time was not originally an essential part of the contract, still that either party may, by a proper notice, bind the other to complete within a reasonable time to be specified in such notice; and if the party receiving such notice do not complete within the time so specified, equity will not enforce a specific performance of the contract, but leave the parties to their remedies and their liabilities at law." See also *Ellis* v. *Bryant,* 120 *Ga.* 890, 894 (48 S. E. 352); authorities cited in note to Johnson *v.* Evans (Md.), 50 Am. Dec. 678-9, and in note to Jones *v.* Robbins, Id. 600. The judge, in passing on both law and facts, could well have found that the time so fixed was reasonable, and that the failure of the vendor to make delivery was a breach. By the terms of the original contract delivery was to commence on February 1st, and 50,000 yards of the cloth were to be delivered each week. No delivery was

made. On February 26th the vendees urged compliance, stating the necessity for promptness. On February 28th the vendor replied somewhat vaguely that "we are going to start to work on your goods either the latter part of this or the first of next week, and will do the best we can to make deliveries as rapidly as possible;" also referring to the anxiety of the vendor to make deliveries and the hope that labor trouble and sickness of operatives would then have ceased to interfere with the work. On March 2d the vendees replied, stating the time which the contract specified for delivery, and stating that while they had granted to the vendor an extension until the next week, it must be thoroughly understood that they must receive at least 100,000 yards of the cloth the next week and 100,000 yards the following week in order to comply with their contract, and insisting that the vendor must ship accordingly. Still no shipments were made, the vendor merely replying in effect, on March 6th, that they were going to start to work on the goods "this week," and would make a shipment the next week, and then continue to ship "as fast as we can." On March 9th the vendees gave notice by telegram that they could not wait longer, but immediate delivery must be made. To this the vendor replied in a telegram, calling attention to the red lines on its letter-heads, and stating that it would commence delivering goods "next week." The evidence showed that the mills had 36,048 spindles, and that at no time were more than 9,275 of them stopped. Other evidence was also introduced, tending to show what the producing capacity of the mill was each week. Under all the evidence there was no error in deciding that the defendant had committed a breach of its contract, and that the plaintiffs were entitled to recover.

<div align="center">

*Judgment affirmed. All the Justices concur.*