2836.  GREENE COUNTY OIL CO. *v.* McCAW MANUFACTURING CO.

Even where time is expressly declared to be of the essence of a contract, it may be waived by the conduct of the party for whose benefit the stipulation was made. In this case the undisputed facts show that the defendant reaffirmed the contract after the expiration of the time limit for its performance by the plaintiff. The contract was therefore enforceable, after performance by the plaintiff had been accepted by the defendant, although the performance was after the expiration of the stipulated time limit.

DECIDED FEBRUARY 22, 1911.

Complaint; from city court of Macon—Judge Hodges.  June 27, 1910.

*Samuel H. Sibley,* for plaintiff.

*Miller & Jones,* for defendant.

HILL, C. J.  The Greene County Oil Company sued the McCaw Manufacturing Company for an alleged balance due on four tank cars of crude cottonseed oil. The balance claimed to be due was $601.16, and the trial judge directed a verdict for the plaintiff for

$72.66. This was excepted to by the plaintiff. The oil was shipped in four tanks, Nos. 101, 113, 114, and 130. These tanks were delivered by the defendant, through the railroad company, to the plaintiff, and, under the contract of purchase, were to be loaded by the plaintiff and shipped to the defendant within a stipulated time and at a price fixed by the contract. The only unsettled question made by the record is as to the oil shipped in tank No. 130, and the price which the defendant should pay for the oil; it being contended by the defendant that this oil was not shipped within the time stipulated by the contract, and for that reason, by the terms of the contract, and under the rules of the Georgia Cotton Seed Crushers' Association, which were made a part of the contract, the market price at the time of receiving the oil was to be paid, and not the price stipulated by the contract—the contract price being 38 1-2 cents per gallon free on board cars at Union Point, in buyer's tank cars, and the market price when the oil was actually received by the defendant being 32 cents a gallon. In other words, there is no controversy except on the one point as to what price, under the facts and the contract, should be paid by the defendant for the oil—the contract price or the market price. The learned trial judge took the view that under the facts, about which there was no dispute, the defendant was only required to pay the market price, and the plaintiff insists that the defendant should pay the contract price.

The plaintiff concedes that the oil in tank No. 130 was not shipped and delivered to the defendant within the time stipulated by the contract, and it also concedes that time was of the essence of the contract; but it contends that, with full knowledge of the delay in the shipment, the defendant waived the delay and accepted the oil, and is therefore bound to pay the contract price. It will thus be seen that the only unsettled question for the decision of this court is whether there was a waiver by the defendant of the time stipulated in the contract when the oil should have been shipped and delivered to it; it being admitted by the defendant that the oil was shipped, delivered, and accepted by it. The facts illustrating this point, and about which there is no controversy, are as follows: Under the contract and the rules of the Georgia Cotton Seed Crushers' Association, which, as before stated, were made a part of the contract, the time for delivering the oil in tank No. 130 expired on October 21. On October 22, with knowledge of the fact that the oil

in tank No. 130 had not been received, and that the time for its delivery had expired, the defendant wrote to the plaintiff a letter, in which nothing was said about the delay, or about canceling the contract on account of the delay, but in which direction was given to load tank No. 130 (which the defendant was then advised was on the side-track of the plaintiff) to its full capacity, and authorized the plaintiff to make a draft on it, not for the market price of the oil, but for the contract price. On October 23, the day following the receipt of this letter, the tank was loaded by the plaintiff, ordered out of its side-track on October 24, and moved on the 25th by the railroad company. On October 28 the defendant telegraphed to the plaintiff, claiming that the shipment was not in time, and that it would only honor a draft based on the market price. It is insisted that there was also an implied waiver by the defendant of the time limit in the contract, in that it permitted the tank to remain on the side-track of the defendant from the 15th to the 21st of October, for the purpose of being loaded. The oil should have been shipped on the 15th, and the time limit was out on the 21st, and it is insisted that this was a continuing permission to load the tank, and amounted to a promise that it would receive the oil.

Attention is called to rule 26 of the Georgia Cotton Seed Crushers' Association, which was made a part of the contract, and which provides that where there is a delay on the seller's part the buyer has the right to charge demurrage for five days at $2 per day, and after the expiration of the five days "the buyer shall have the right to cancel or purchase the quantity of oil due on contract for the account of the seller, at the lowest obtainable price, through any cotton-oil broker in good standing, holding the seller for the loss sustained." It is contended that under this rule a cancellation of the contract does not result from a delay of five days ipso facto; but the delay merely gives the right to the seller, because of such delay, to cancel the contract, or to adopt the alternative option of not canceling the contract, but buying the oil contracted for in the market and holding the seller for any loss. It is also expressly provided by these rules that the seller can not cancel the contract, although he may, by the default of the buyer, have acquired the right to cancel it, until he has notified the buyer by wire or registered letter of his purpose, "it being understood that the contract is of force until such notice of cancellation has been given by the seller." Of course,

it can not be assumed that these rules of the association undertake to discriminate between the buyer and the seller, or to give one a right and not the other; and therefore, before the right of cancellation can be exercised by either, actual notice must be given of the intention to cancel the contract. In this case, under the undisputed facts, no notice was given by the buyer to the seller of any intention to cancel the contract, and no complaint was made by the buyer to the seller of the delay in fulfilling the contract; but after the delay had occurred, and with full knowledge of that fact, the defendant expressly by letter treated the contract as still of force in all respects.

The conclusion at which we have arrived seems to be strongly supported by authority. Clark, in his excellent work on Contracts (page 676), declares the general principle to be as follows: "A breach of condition which would discharge a party if at once treated by him as a discharge will not have this effect if he goes on with the contract, instead of repudiating it. If a party wishes to exercise his right to rescind the contract because of the other party's failure to comply with the contract in some substantial particular, he must give the latter *clear notice* of his intention, unless there are circumstances rendering the notice unnecessary.". Under a proper construction of the contract in this case, it was the duty of the defendant to have given to the plaintiff notice of its cancellation of the contract, or notice before the tank was loaded and the oil shipped that it would not accept the oil at the contract price, but would only accept at the market price. This duty was imposed by the law as well as by the contract. "Even where time is expressly declared to be the essence of the contract, it may be waived by the conduct of the person for whose benefit the stipulation was made; as, for instance, where he recognizes the contract as still of force after the time for performance has passed." 9 Cyc. 608; 35 Cyc. 684. This general rule is applicable to the facts of the present case, for here it can not be reasonably denied that the conduct of the defendant for whose benefit the stipulation as to the time when the oil should be delivered was made was a recognition by it that the contract was still in force, although the time limit in which the plaintiff agreed to deliver the oil had expired. In the case of *Jordan* v. *Rhodes,* 24 *Ga.* 478, it is held that, "notwithstanding time is of the essence of the contract, it may be waived; and a subsequent offer to

fulfill the contract and urging a compliance on the other side, instead of treating the contract as at an end, amounts to a waiver." See, also, *Moody* v. *Griffin*, 60 *Ga.* 460, where it is held that, although time is of the essence of the contract, it may be waived; and if, by consent, one party has complied with its terms after the prescribed time, a bill for specific performance will lie against the other.

Applying to the undisputed facts of this case the principle of law above discussed, the conclusion seems to be irresistible that the defendant waived the delay in the delivery of the oil within the time limit stipulated by the contract, and, after this delay, fully recognized the contract as being of force, and was bound to the plaintiff to pay the contract price for the oil which it had accepted; and therefore the trial judge, there being no issue of fact, should have directed a verdict (if he directed a verdict at all) for the plaintiff, for the contract price of the oil contained in tank No. 130.

*Judgment reversed.*