## BOSWELL v. UNITED STATES.
### No. 10027.

Circuit Court of Appeals, Fifth Circuit.

Nov. 4, 1941.

Ezra E. Phillips, of Atlanta, Ga., for appellant.

T. Hoyt Davis, U. S. Atty., of Macon, Ga., H. G. Rawls, Sp. Atty., Dept. of Justice, of Albany, Ga., and John P. Hearne, Atty., Dept. of Justice, of Washington, D. C., for appellee.

Before FOSTER, HUTCHESON and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for enforcement of a contract for the sale of land and for an injunction against timber cutting. The claim was that though the land was bound to the United States under a valid contract of sale, the defendant Yundt had, in an endeavor to repudiate the contract,

quitclaimed the land to Boswell who was attempting to use the land as his own.

The defense was that the contract had been breached by a flagrant and unreasonable delay in performance, and the government had thereby lost all right to the land.

The facts are brief and without dispute. (1) On March 28, 1939, defendant Yundt gave plaintiff a six month option to purchase the land for $2,100. The provisions material here are, (a) that Yundt was the owner of the land and would convey a valid title; (b) that should the United States determine that the title should be acquired by condemnation and not by purchase, $2,100 should be the agreed award; (c) that plaintiff should have a reasonable time after the acceptance of the option within which to secure an abstract or certificate of title and have it examined. (2) On September 22, 1939, plaintiff accepted the option. (3) On October 24, 1939, Mr. Hampton, the officer in charge, for the United States, of the acquisition of the land, ordered Faust, a competent abstractor, to prepare an abstract, and from time to time thereafter, he inquired as to the abstractor's progress. (4) Between September 22, 1939 and October 18, 1940, Yundt frequently complained, and inquired of Hampton as to the cause, of the delay, especially because Hampton had told him he would have to pay the taxes until he made his deed, but it was not until the last-named date that he did anything about the delay or gave any intimation that because thereof, he claimed a breach of the contract or was of a mind to denounce it. (5) On that date, Yundt said to Hampton: "I am going to cut this thing off, it has now run more than a year since you people said you were going to buy the property and I have got all of this risk all of this time. Either pay for it or we stop it. I think you have waited too long. I will wait until the end of the month." And Hampton suggested, "You know the abstractor. Won't you ask him about this situation?" Whereupon Yundt did call Faust. Faust told him he would have the papers in by the end of the month and Yundt said to Faust: "Now if they are not in here by the end of the month, I am going to, on my side, say this thing is off." Thereafter Yundt again talked to Hampton, telling him that Faust had said he

would have the papers in by the end of the month and telling him too, that the contract had run too long, that he was going to cut it off definitely, that he was tired of it.

Also on October 18th, defendant Boswell, by letter, endeavored to obtain a release of the contract so that he could buy from Yundt at the option price, Yundt having made the condition that he be released. On November 12th, Hampton wrote Boswell that the contract would not be released and that Mr. Yundt had on November 9th advised that he was not interested in selling the land to anyone other than the United States and would seriously object to cancellation of the option by the United States. Thereafter Boswell withdrew his offer to purchase at the option price. On November 12th, the abstract was delivered to Hampton and thereafter in ordinary course the title was examined and found good, and on December 9th, the government standard form voucher for the purchase price was sent to defendant Yundt.

In the meantime however, on November 26th, Yundt, in a registered letter to plaintiff, which made no reference to the October 18th conversation or the November 1st deadline he had set in it, but fixed the deadline as of November 26th, notified plaintiff that he considered that the contract had been terminated by unreasonable delay and was of no further force or effect. On December 23d, defendant Boswell, with full knowledge that plaintiff had on December 5th denied Yundt's right to call the trade off, and that it was contending that the contract was in full force and effect, obtained a quitclaim deed from Yundt, paying him therefor $3,500 or $1,400 more than the contract price.

On January 18, 1941, this suit was filed and on January 27, 1941, plaintiff filed a proceeding to condemn, contending in that proceeding that the award must be fixed at $2,100, as provided in the option contract but no declaration of taking has been filed. Yundt has paid the 1940 taxes, $49.20, and plaintiff has not offered to pay to Yundt any interest on the purchase price or to reimburse him for any part of the taxes paid by him.

The district judge, of the opinion that there had been unreasonable delay but that this had not worked a forfeiture,

gave judgment enforcing the contract but imposing equitable conditions [1] on the enforcement. The defendant Boswell alone appealed.

We think it clear that there is nothing in the judgment of which appellant can complain. It is settled law that unless time is of the essence of a contract, mere lapse of time does not avoid it or forfeit rights under it. And it is equally well settled that time is not of the essence of a contract which provides for a reasonable time. Taylor v. Goelet, 208 N.Y. 253, 101 N.E. 867, Ann.Cas. 1914D, 284. In such a case where time is not of the essence, one wishing to rescind for delay must give notice of his intention so to do and allow a reasonable time. Burkhalter v. Roach, 142 Ga. 344, 349, 82 S.E. 1059; Augusta Factory v. Mente & Co., 132 Ga. 503, 512, 64 S.E. 553; Ellis v. Bryant, 120 Ga. 890, 894, 48 S.E. 352. Even where time is of the essence, it may be waived and where as here, it has been, notice of intention and reasonable time to perform must be given. Knipe v. Troika, 92 Kan. 549, 141 P. 557; Hopp v. Bergdoll, 285 Pa. 112, 131 A. 698; Studdard v. Hawkins, 139 Ga. 743, 78 S.E. 116; Williston Contracts, 1936 Ed. sec. 688; Southern Savings Bank v. Dickey, 58 Ga.App. 718, 199 S.E. 546; Greene County Oil Co. v. McCaw Mfg. Co., 9 Ga.App. 39, 70 S.E. 201. Here, the record shows that until October 18th, no claim was made by Yundt that the contract had been breached and plaintiff's rights forfeited, and if what was then said can be construed as a notice of termination because of unreasonable delay, the time fixed in the notice was too brief.

But a reasonable construction of the evidence does not justify the view that what Yundt then said was a definite notice of intention to rescind in a reasonable time followed by a rescission at the end of that time. It was nothing more than a tentative statement of his disposition to call the matter off, a statement not followed up and in fact abandoned, (a) by his conduct on November 1st, in not declaring the contract at an end, (b) his conversation with Hampton on November 9th, and (c) the nature and terms of the notice of November 26th, in which, making no reference to the earlier date, he undertook to then peremptorily declare the contract at an end. Under these circumstances, dilatory as the plaintiff has been, the facts are not such as to justify a finding that on November 26th, the contract was at an end. For the abstract was then fully finished and in course of examination and in a wholly reasonable time thereafter, there was a tender of the purchase price.

Under all the circumstances, the district judge was right in holding that the contract continued in force and bound both Yundt and Boswell, and he was also right in attaching equitable conditions to the enforcement. Both the government and the appellant complain of that part of Paragraph 3 of the decree which, declaring that the value for condemnation shall be $2,100 plus interest from January 1, 1940, and $49.20, the 1940 taxes, paid by Yundt, fixes these conditions. We think it just and within the issues, but if it is not, the government cannot complain of it for it has not appealed from the decree and the appellant cannot complain, for by giving him interest and the taxes for 1940 in addition to the $2,100, the contract calls for, the complained of provision does not injure, it benefits him.

The judgment is affirmed.

---

[1] Because of the long delay on the part of plaintiff in closing the sale, the court, while holding defendant to the contract, imposed a condition that to the $2,100 should be added interest at 7% from January 1, 1940, which he found was a reasonable time for closing the sale, and 1940 taxes, $49.20, paid by Yundt.