T. M. JAMES & SONS, Respondents, v. MARION FRUIT
JAR AND BOTTLE COMPANY, Appellant.

69  207<br>76  463<br>69  207<br>84  73

### Kansas City Court of Appeals, February 15, 1897.

1. **Contracts**: EVIDENCE: LETTERS. Where the evidence relied on
to establish a contract consists wholly of telegrams and letters, it
raises a question of law for the court.

2. ———: AGGREGATIO MENTIUM: PROPOSAL: CONDITION. To consti-
tute a valid contract there must be a mutual assent of the parties
thereto and they must assent to the same thing in the same sense;
and an absolute acceptance of a proposal coupled with a condition
will not constitute a contract.

3. ———: PROPOSALS: OFFER: ACCEPTANCE. A party can not accept
the terms of an offer before they are communicated to him so as to
bind the offerer.

4. ———: OFFER: DELAY AND ACCEPTANCE. Where a telegram making
an offer demanded an instant acceptance but was not received until
10 o'clock on Saturday night and the answer was delayed until
Monday, the delay was in this case unreasonable and the acceptance
did not bind.

*Appeal from the Jackson Circuit Court.*—HON. C. L. DOBSON, Judge.

REVERSED.

*Karnes, Holmes & Krauthoff* for appellant.

(1) No contract was concluded between the parties by the correspondence which took place on April 18, 19 and 20, 1895.  *Oil Co. v. Lead Co.*, 4 Dill. 431, 434; *R'y v. Columbus R'g Mill*, 119 U. S. 149, 151; *Bruner v. Wheaton*, 46 Mo. 363, 366; *Eads v. Carondelet*, 42 Mo. 113, 117; *Strange v. Crowley*, 91 Mo. 287, 295; *Robinson v. R'y*, 75 Mo. 494, 498; *Taylor v. Von Schraeder*, 107 Mo. 206, 225; *Weaver v. Burr*, 31 W. Va. 736; 3 L. R. A. 94, 97; *Steam Co. v. Biggs*, 4 De G. F. & J. 191, 197; 1 Pars. Cont. *476 (bot. p. 507); Poll. Cont. [Wald's 2 Ed.] 38; *Slaymaker v. Irwin*, 4 Whart. 369, 380; *Hussey v. Horne-Payne*, 1 L. R. 8 Ch. Div. 670, 678; *Appleby v. Johnson*, L. R. 9, L. R. C. P. 158, 163; *Faunce v. Assurance Co.*, 101 Mass. 279, 280; *Ins. Co. v. Mayes*, 61 Ala. 163, 166; Clark on Contracts, 63; Hare on Contracts, 365; *Ortman v. Weaver*, 11 Fed. Rep. 358, 360; *Potts v. Whitehead*, 23 N. J. Eq. 512, 514; *Yore v. Banker's Ass'n*, 88 Cal. 609, 615; *Norrington v. Wright*, 115 U. S. 188, 208, 209; *Filley v. Pipe*, 115 U. S. 213, 220; *Arthur v. Gordon*, 37 Fed. Rep. 558, 560; *Eliason v. Henshaw*, 4 Wheat. 225, 229; *Potts v. Whitehead*, 20 N. J. Eq. 55, 59; *Mfg. Co. v. Broderick*, 12 Mo. App. 378; *Lancaster v. Elliott*, 28 Mo. App. 86, 92; *Ridgeway v. Wharton*, 6 H. L. Cas. 268; Clark on Contracts, 29; *Goulding v. Hammond*, 54 Fed. Rep. (C. C. A.) 639, 643; Clark on Contracts, 49.  (2) *A fortiori*, a withdrawal by telegram sent and received by the offeree before receipt of an offer for-

warded by post would be entirely effectual. Leake on Contracts [2 Eng. Ed.], 43; *Dickinson v. Dodds*, L. R. 2 Ch. Div. 463; *Bank v. Hall*, 101 U. S. 43, 50; Clark on Contracts, p. 37; Leake on Contracts [2 Eng. Ed.] 28; Clark on Contracts, 60, 61, 65; *Anderson v. Public Schools*, 122 Mo. 61; *Weaver v. Burr*, 31 W. Va. 736; 3 L. R. A. 94, 97; *Hussey v. Horne-Payne*, L. R. 8 Ch. Div. 670, 678; *Appleby v. Johnson*, L. R. 9 C. P. 158, 163; *Ortman v. Weaver*, 11 Fed. Rep. 357, 360; *Goulding v. Hammond*, 54 Fed. Rep. 639, 643; *Schwartz v. Ins. Co.*, 18 Minn. 448, 455; *Hyde v. Wrench*, 3 Beav. 334, 337; *Taylor v. Von Schraeder*, 107 Mo. 206, 225; *Eads v. Carondelet*, 42 Mo. 113, 117; *Bruner v. Wheaton*, 46 Mo. 363, 366; *Strange v. Crowley*, 91 Mo. 287, 295; *Egger v. Nesbitt*, 122 Mo. 667, 674; *Bank v. Hall*, 101 U. S. 43, 50; *R'y v. Rolling Mill*, 119 U. S. 149, 151; *Kleinhaus v. Jones*, 68 Fed. Rep. 742, 749 (C. C. A.). (3) Plaintiffs' telegram of April 22, 1895, reading, "Ship the jars. Write to-day," was also ineffectual to fix any rights or obligations between them and defendant. Clark on Contracts, 39, 40, 52; Leake on Contracts [2 Eng. Ed.] 40; Clark on Contracts, 41, 42. (4) The demurrer to the evidence should have been sustained. If the views already presented in this brief are sound, it follows that the court erred in declaring peremptorily for plaintiffs and in refusing to sustain defendant's demurrer to the evidence.

*R. E. Ball* for respondents.

(1) A complete agreement as to terms was reached before defendant sent the telegram of Saturday night, April 20. *Egger v. Nesbitt*, 122 Mo. 667, (673); 3 Am. and Eng. Ency. of Law, 856, and cases

cited, note 2; *Adams v. Lindsell*, 1 B. & Ald. 681.
(2) If there never had been a contract before, one
was certainly closed by plaintiffs' wire of Monday
morning, April 22. 11 Am. and Eng. Ency. of Law,
236, notes 1 and 2; *Streeter v. Streeter*, 43 Ill. 155
(165); *Lockwood v. Ins. Co.*, 47 Conn. 553; *Klein-
schmidt v. McAndrews*, 117 U. S. 282 (288).

SMITH, P. J.—This is an action to recover dama-
ges for an alleged breach of contract.

The petition alleged that on or about the twentieth
day of April, 1895, the plaintiffs, who were partners,
PLEADINGS.    entered into a contract with the defendant
whereby the plaintiffs agreed to purchase
of the defendant five hundred gross of Mason fruit
jars, one half of said quantity to be quart jars and one
half half-gallon jars, one dozen each to the box, and
the price of said quart jars to be $5.10 per gross, and
of said half-gallons $7.10 per gross, delivered in Kansas
City, said *terms being net cash within ten days from
shipping;* "that the defendant agreed to furnish and
deliver to the plaintiffs said jars at the price as afore-
said and to ship the same on or before May 1, 1895;
that immediately after said contract of sale was
entered into and agreed upon as aforesaid, the defend-
ant, by telegram demanded an additional price for
said jars of twenty-five cents per gross, to which plain-
tiffs, in order to avoid a controversy, at once agreed,
by the telegram sent and prepaid, in reply to defendant's
said demand, and offered to pay said increase of price
for said jars, as demanded by the defendant; that there-
upon the defendant refused to comply with the terms
of said contract, or to furnish or deliver said goods to
the plaintiffs, either at the original price agreed upon,
as aforesaid, at $5.10 per gross for the quart jars, and
$7.10 per gross for the half-gallon jars, or at the in-

crease of twenty-five cents per gross over those prices; that after entering into said contract and agreement with the plaintiffs, as aforesaid, the price of said jars advanced in value, and their said value increased $2.25 per gross at wholesale at the factory, and the value of said jars had, before the expiration of the time within which defendant agreed to ship and deliver the same, increased to the sum of $7.35 per gross for the quart jars, and $9.35 per gross for the half-gallon jars at the factory; that prior to the institution of this suit, defendant repudiated said contract and informed plaintiffs that it would not fill the said orders or furnish said goods," etc. The answer was a general denial.

There was a trial which resulted in judgment for plaintiffs, and defendant has appealed.

The paramount question presented for decision by the defendant's appeal is whether the evidence estab-

CONTRACTS: evidence: letters. lished the contract alleged in the petition. And since the evidence relied on for that purpose consisted wholly of certain telegrams and letters the question was one of law for the court to decide. *Potts v. Whitehead*, 20 N. J. Eq. 55; *Mfg. Co. v. Broderick*, 12 Mo. App. 378.

The plaintiffs were wholesale and retail dealers in crockery and stoneware in Kansas City, and the defend-

FACTS. ant was a manufacturer of the Mason Fruit jars at Marion, in the state of Indiana. On April 18, 1895, the plaintiffs sent the following telegraphic message to defendant: "Wire prices Mason Jars, dozen boxes, 500 gross." On April 19, 1895, the plaintiffs received the following telegraphic message from defendant: "Pints, $4.90; quarts, $5.10; halves, $7.10, delivered, spot cash. Shipments before May 10, if specifications favorable."

On said April 19, 1895, the defendant also wrote plaintiffs the following letter, which was received in the

due course of mail: "Replying to your telegram, we have wired you the following prices:

"Pint Mason fruit jars complete, 1 dozen in box, $4.90; quart Mason fruit jars complete, 1 dozen in box, $5.10; half-gallon Mason fruit jars complete, 1 dozen in box, $7.10, delivered to your city. Terms net cash ten days from shipment. The goods to be shipped on or before May 1, and the specifications favorable, and we would want as many half-gallon as quarts in the order."

On April 20, 1895, the plaintiffs sent the defendant the following telegraphic message.

"Accept quotations of the 19th. Composition half each quarts and half-gallons. Written. Answer." On which last named date the plaintiffs wrote the defendant as follows: "We have just wired you as follows: 'Accept your quotations 19th. Composition half each quarts and half-gallons. Written. Answer.' And this is in confirmation. Please advise us by what road you propose to make shipment of the jars, etc."

On Saturday, April 20, 1895, at 6:45 P. M. the defendant sent the plaintiffs the following telegram: "Price to-day twenty-five cents gross higher. Wire instantly or this is withdrawn. Advancing." Which said telegram was received at Kansas City at 7:05 P. M., but not delivered to plaintiffs until about 10 P. M. of the same day. On Monday, April 22, 1895, at 10:15 A. M., the plaintiffs sent the defendant the following telegraphic message: "Ship jars. Write to-day." At 3:56 P. M., of said last named day, the defendant sent plaintiffs the following telegraphic message:

"We specified instant answer. Price now two dollars per gross higher."

On said twenty-second of April, plaintiffs sent the defendant the following telegraphic message: "Your telegram 19th received 10 o'clock Saturday night.

Our telegram this morning accepted prices named. Answer quick." This telegram was on the same day followed with a letter from the plaintiffs to defendant to substantially the same effect. At 6 o'clock on said last named day the defendant sent the plaintiffs the following telegraphic dispatch: "We will not accept unless according to our last telegram, and this withdrawn unless wire instantly." There were other telegraphic messages between the parties in which plaintiffs insisted there was and defendant that there was not a contract concluded between them in respect to the sale of the fruit jars.

In endeavoring to expound and interpret the written communications to which we have just called attention a brief reference to pertinent principles of the law may be found helpful: "To constitute a

——: aggregatio mentium: proposal: condition.

valid contract there must be a mutual assent of the parties thereto, and they *must assent to the same thing in the same sense;* therefore, an absolute acceptance of a proposal, coupled with any qualification or condition, will not be regarded as a complete contract, because there at no time exists the requisite mutual assent to the same thing in the same sense. Any words manifesting an *aggregatio mentium* are sufficient to constitute a contract, but the mutual assent, the *aggregatio mentium,* can not, of course, be attained without the assent of both parties." *Bruner v. Wheaton,* 46 Mo. 363, 366. "There can be no valid contract unless the parties thereto assent, and they must assent to the same thing in the same sense. * * * An absolute acceptance of a proposal, coupled with any qualification or condition, will not be regarded as a complete contract, because there at no time exists the requisite mutual assent to the same thing in the same sense." *Eads v. Carondelet,* 42 Mo. 113, 117. "To make a concluded contract, the acceptance must be

unequivocal, unconditional, and without any variance of any sort between it and the proposal." *Strange v. Crowley*, 91 Mo. 287, 295. "A binding contract can only occur when the offer made is met by an acceptance which corresponds with the offer made in every particular." *Robinson v. St. Louis, etc., R'y*, 75 Mo. 494, 498; *Taylor v. Von Schraeder*, 107 Mo. 206-225. "As no contract is complete without the mutual assent of the parties, an offer imposes no obligation until it is accepted according to its terms. So long as the offer has been neither rejected nor accepted, the negotiation remains open and imposes no obligation upon either party; the one may decline to accept, or the other may withdraw his offer; and either rejection or withdrawal leaves the matter as if the offer had never been made. A proposal to accept, or an acceptance upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiations, unless the party who made the original offer renews it, or assents to the modification suggested. The other party, having once rejected the offer, can not afterwards revive it by tendering an acceptance of it." *R'y v. R'g Mill*, 119 U. S. 149, 151. "To make a contract by an offer and acceptance, you must find an offer and a simple unconditional acceptance; that is to say, an acceptance not introducing a new term. If a new term is introduced, it becomes no longer an acceptance but a mere counter offer, which must be accepted before there is any contract." *Hussey v. Horn-Payne*, L. R. 8 Ch. Div. 670, 678; *Appleby v. Johnson*, L. R. 9 L. R. C. P. 158, 163.

It is thus seen that it is the *aggregatio mentium* of the parties that marks the completion of the contract, and without which it is incomplete and incapable of enforcement. It is clear that according to the authorities already quoted unless the evidence discloses an

offer on the one side and acceptance on the other there can be no contract. If the offer be conditioned or if unconditioned and the acceptance qualified or modified there is negotiation but no *aggregatio mentium*, no contract. Recurring to the evidence, it will be seen that the initial telegraphic message was no more than an inquiry addressed by the plaintiffs to defendant. It was not a proposition to purchase. The defendant in response to this inquiry of plaintiffs gave their quotations for pints, quarts, and halves delivered spot cash, if specifications favorable, shipments to be made before May 10. Was this response of defendant an offer which by acceptance could be turned into a contract? Most manifestly it was conditional and not subject to acceptance or if accepted no contract could result therefrom. In Clark on Contract, 60, 61, 65, it is stated that "offers which by acceptance may be turned into binding promises, must be distinguished from offers which merely amount to invitations to deal. In the latter case the offer is not made in contemplation of an acceptance resulting in legal relations and acceptance will not result in contract. * * * And this rule applies whenever it is clear that the proposition was intended merely as an invitation to deal and not as an offer to become binding on acceptance."

It is clear from the terms of the defendant's responsive message that it was thereby intended to merely invite negotiations. Obviously the language of the defendant's response conveyed to plaintiffs an implied invitation to make an offer to buy the goods about which they had inquired. It seems conceded that by the terms "if specifications favorable" the defendant meant to say to plaintiffs that if they would place with it an order for fruit jars that it would fill the same at the prices named, if for the kinds and quantities that it had on hand and was willing to sell.

It might well have been that the defendant did not
have an equal quantity of the various kinds of jars on
hand; or that the demands of the trade were greater
for one kind than another; or that it was undesirable
for any reason to sell more of one size than of either or
both of the others or *vice versa.* The defendant may
have been influenced by such considerations in incor-
porating this reservation in its invitation, but, however
this may be, it is clear that it was understood by the
plaintiffs that the defendant reserved the right to
accept or reject any offer that might be made in pur-
suance of the invitation extended. It can not be con-
tended with any show of reason that the acceptance of
the defendant's invitation would have had the effect to
complete a contract, for there was one term of the invi-
tation, namely, "the specifications," which would still
be open, notwithstanding the acceptance so that there
could be no *aggregatio mentium* as to that, and therefore
no contract. The rule is that an acceptance, to be
effective, must have nothing to be afterward agreed
upon. If anything is left for subsequent arrangement
the parties have not agreed. Clark on Contracts, 37.

The plaintiff on the next day after the receipt of
the information and invitation contained in the defend-
ant's telegraphic response, wired defendant an offer to
purchase five hundred gross of the latter's fruit jars at
quoted prices "composition half each quarts and half-
gallons." It is too plain for argument that this last
telegraphic message of plaintiffs to the defendant was an
offer made in view of the defendant's previous invitation.
It was an offer to purchase the number of fruit jars
which plaintiffs had named in the telegraphic inquiry
addressed to it in the first instance. It was without
condition and in terms so clear, specific and certain
that the contractual relation would inevitably result
from its acceptance and thus put an end to the negoti-

ations theretofore pending. But the plaintiffs insist that the defendant's responsive telegraphic and confirmatory letter of the nineteenth of April, when taken together, specified everything which the defendant required for the sale of its goods, or, in other words, the two, when read together, disclose an unconditional offer. It is true that in the latter it was stated that "the goods would be shipped on or before May 1, and the specifications favorable, and we would want as many half-gallons as quarts in the order," but this was not available, as we shall see, to eke out the telegraph. The plaintiffs further insist that even if the defendant's telegraphic message, owing to the condition therein contained, was not an offer whose acceptance could result in a contract between the parties, that the defect therein was supplied by the terms of the letter so that the two together constituted an unconditional offer, whose acceptance would have the effect to create the contractual relation. But the inherent difficulty in the way of upholding this insistance is that defendant's letter was not received by plaintiffs until after the latter had sent their message to the former saying they "Accepted quotations, composition half each quarts and half-gallons." The specifications of the letter had not been communicated to the plaintiffs when this message was sent to the defendant. The offer contained in this message was made with reference to the information contained in defendant's message which had been received, and not to the additional information of the letter which had not then been received. If any one of the terms of defendant's supposed offer was not to be found in the telegraphic message, but only in the letter, then it is clear that the plaintiffs did not assent thereto, for it is absurd to say they assented to a term that had not been communicated to them.

No case has been cited where it has been held that

the offeree can accept the term of an offer before it is communicated to him so as to bind the offerer. In all cases there must be communication both of the offer and acceptance. This is essential for without communication there can be no meeting of minds and therefore no agreement without which contract is impossible. ⌐ Clark on Contracts, 29. *Smith v. Hughes*, L. R. 6 Q. B. 607, per BLACKBURN, J.; *Cornish v. Abington*, 4 Hurl. & N. 549; *Cox v. Troy*, 5 Barn. & Ald. 474; *Brown v. Hare*, 3 Hurl. & N. 495; *Shepherd v. Gillespie*, 3 Ch. App. 764; *In re Est. of England Banking Co.*, 4 Ch. App. 14; *Mactier v. Frith*, 6 Wend. 103; *White v. Corlies*, 46 N. Y. 467; *Kleinhais v. Jones*, 68 Fed. Rep. (C. C. A.) 742, 749. It is true that the rule is where an offer is made by letter that it must be considered as making, during every instant of time that the letter was traveling, the same identical offer to the offeree, and the contract is completed the moment of the acceptanc*  *Adams v. Lindsell*, 1 B. & Ald. 681. But manifest this rule is without application here, for the plain reason that there is no pretense that so much of the defendant's supposed offer, as was contained in the letter, had been communicated to plaintiffs before the time of their alleged acceptance. ⌐ It must therefore be seen that t .e letter can not be welded on the telegram in order to make a completed, unconditional offer on defendant's part, and without which it is not contended there was such an offer made.

But if the defendant's letter should be considered in connection with its dispatch of the same date, for the purpose of determining whether together they embodied an unconditional offer, still this does not obviate the difficulty, for the reason that the latter by its terms also reserves the option to reject any offer, if the specifications were not favorable. So that both tele-

gram and letter, whether considered together or separately, show that defendant reserved the right to reject any offer that might be made, if it deemed the specifications unfavorable. And this must have been the plaintiffs' interpretation of the telegram, for in their message, submitting specifications and indicating their willingness to purchase at the prices named, they request an answer. Why request an answer if the defendant had made an unconditional offer which merely required plaintiffs' acceptance to become binding? If their message was an acceptance of an unconditional offer that was the completion of the contract—the end of the previous negotiations, and there was neither necessity nor occasion for requesting an answer. The request of the plaintiffs so made shows that it was but a response by the plaintiffs to defendant's previous invitation to submit an offer subject to the acceptance or ,ion of the latter, and that it was so understood by the former. The defendant, by its telegraphic message of the twentieth of April, saying that the "price to-day twenty-five cents gross higher, wire instantly," in effect advised plaintiffs that their specifications were not favorable and that their order would not be filled. It was, too, a counter offer to the plaintiffs to sell them the fruit jars of the kinds and quantities specified in their offer at twenty-five cents higher per gross, if acceptance was instantly wired to them, or otherwise the offer should be considered withdrawn.

This offer plaintiffs received on Saturday night at 10 P. M., but instead of wiring back their acceptance that night through the same agency, as they might have done, they delayed action until the second day thereafter. It is true that the next day was Sunday, but no reason was shown why acceptance was not wired back on the evening of the receipt of the offer. If the time for accept-

ance had not been limited by the terms of the offer the delay of acceptance doubtless would not, under the circumstances, be deemed unreasonable or untimely. But the plaintiffs were admonished by the very terms of the offer that prompt and immediate action was required of them if they desired to accept the defendant's offer, and that if they did not so act the offer was withdrawn. They were warned in the same connection that the prices were advancing, and that there was an emergency calling for prompt and immediate action on their part. We feel justified in ruling, as a matter of law, that the acceptance of the plaintiffs, thirty-six hours after the receipt of the offer, even under the circumstances shown by the evidence, was not an acceptance within the time required by the terms of the offer itself. The defendant had a perfect right, by the terms of the offer, to limit the time for its acceptance. The time for acceptance specified in the offer was as much a term thereof as the price or the kind and quantity of the goods. After the specified time passed without acceptance the offer was determined. Clark on Contracts, 39, 40, 52. It follows from these observations that the acceptance of the plaintiffs had no effect. An analysis and consideration of the evidence has not convinced us that the contract alleged in the plaintiffs' petition was concluded between the plaintiffs and defendant, and, therefore, we must rule that the trial court erred in its action refusing the defendant's instruction in the nature of a demurrer.

The judgment will be reversed. All concur.