UNION SERVICE COMPANY, Appellant, v. MOFFET-WEST DRUG COMPANY, Respondent.

St. Louis Court of Appeals, May 3, 1910.

1. **CONTRACTS: Contract by Correspondence: Necessity of Proving Acceptance.** Where a contract is declared on as created by correspondence, the correspondence must show that the terms offered by one party were accepted by the other.

2. ——: ——: ——. Where a proposal by one party is not assented to by the other party, but instead the response contains a variation of the terms, this becomes a counter-offer, which must be accepted to form a contract; and if the answer to it departs from the terms proposed, in some respect, another offer is made.

Union Service Co. v. Drug Co.

3. ———: ———: ———: **Facts Stated.** Where plaintiff wrote to defendant offering to furnish six horses and vehicles for $43 a month for two years, and defendant replied offering to take four vehicles as long as the price and outfits were satisfactory, to which plaintiff replied, stating it was in receipt of defendant's letter accepting plaintiff's proposition and saying "whereby we will furnish you with four storm buggies and outfits complete for a period of two years," to which letter defendant did not reply, there was no contract, because plaintiff's first offer was not accepted by defendant, but the latter submitted a counter-proposition which was not accepted; and the letters do not justify the construction that defendant agreed to accept the service of four vehicles for two years, provided the price and outfits were satisfactory.

4. ———: **Letters: Legal Effect: Question for Court.** The effect of letters alleged to constitute a contract by correspondence is for the court, and a party is not entitled to have the question of whether a contract has been formed, and, if so, on what terms, submitted to the jury.

Appeal from the St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

AFFIRMED.

*N. S. Brown* for appellant.

(1) (a) The contract in this case was an agreement for a period of two years with the right reserved to the defendant to terminate the same at any time upon reasonable notice to appellant that the price and service were not satisfactory. (b) There was no termination of the contract. (c) The defendant at the time of the sale of its business to the Merrill Drug Company, and subsequently thereto, expressly recognized the contract as a binding and existing obligation upon itself for the full period of two years. (2) The contract in question could only be terminated by the defendant, before the expiration of two years, by reasonable notice to the plaintiff that the price and service were not satisfactory. Mfg. Co. v. Mfg. Co., 100 Mo. 325; Ford v. Dwer, 148 Mo. 528; Harley v. Sanitary Dist., 107 Ill. App. 546; Mining Co. v. Humble, 153 U.

S. 540; Lawson on Contracts (2 Ed.), sec. 417. (3) In view of the conflicting parol evidence of conversations between officers of plaintiff and defendant, as regards the term of the contract, plaintiff was entitled to the verdict of the jury upon that question.

*S. T. G. Smith* for respondent.

GOODE, J.—Both parties are incorporated companies, the plaintiff having succeeded to all the interests, contracts and rights of its predecessor, the St. Louis Service & Horse Company. The action is to recover damages for the refusal of defendant to comply with a contract alleged in the petition to be "embodied in certain letters, dated as follows: One September 15, 1905; two September 29, 1905, and one September 30, 1905." It is alleged that by the contract plaintiff agreed to furnish and defendant to use and pay for four storm buggies with horses and harness, to be delivered every day for a period of two years, beginning October 15, 1905. The demand is resisted on the theory the contract was not for two years, but was terminable at defendant's option and was terminated March 1, 1906. The court below at defendant's request, directed a verdict for plaintiff for $10.93, as being the amount defendant would owe if its contention were right; whereas plaintiff asked judgment for $3400, as the amount that would have been earned if the contract was for two years and had been carried out. The averment of the petition is defendant notified plaintiff it no longer desired the latter to furnish buggies under the contract after February, 1906, but notwithstanding said notice plaintiff stood ready and willing to comply with the contract to the date of its expiration, two years from October 15, 1905. The four letters said to contain the contract are these:

"My dear Mr. West:                    "Sept. 15, 1905.

"Mr. Anderson tells me that you will probably make some change in your present contract with reference to storm buggies for your salesman. As he no doubt explained to you, I have organized a company for the special purpose of supplying high class equipment for work of this kind.

"I understand you will want six complete outfits, one of which will be maintained at Wellston. I beg to quote you a rate of $45 per calendar month for each outfit, contract to run two years from date of commencement, with the privilege of extension beyond this period at the same rate, or to reduce the number of buggies at the expiration of two years if deemed expedient. This rate contemplates that the equipment shall be delivered to the salesman at the store, or to be called for, as you may elect. It also contemplates the supplying of equipment that shall be entirely satisfactory to you. You may receive bids as low, or perhaps lower than I have quoted, but I feel quite sure that it will be difficult for any one else to furnish you with a more satisfactory service than I am able to furnish. I am familiar with the requirements of this class of work, and have in Mr. Anderson one of the most competent assistants that can be found in the city.

"If you should elect to accept this proposition, I shall require a little time in which to get the equipment together, which will all be new and strictly first-class.

"Very truly yours,

"UNION SERVICE COMPANY,

"By JOHN M. ALLEN,' President."

"My dear Mr. West:                    Sept. 29, 1905.

"With reference to your talk yesterday with Mr. Anderson in the matter of supplying storm buggies for your salesmen, I have decided to make you a price on the entire outfit as described in my letter of the 15th inst., for Forty-three dollars ($43.00) per month for each and every working day in the calendar month.

"If you find this proposition satisfactory and will advise me to-day, I will immediately place the order for the equipment, and hope to be able to deliver the entire six buggies at your place of business for service on the 15th day of October.

"I am quoting you an excéptionally close price and propose to furnish you a class of equipment that your salesmen will be proud of.

"Sincerely yours,
"UNION SERVICE COMPANY,
"By JOHN M. ALLEN,  President."

"St. Louis, Mo., Sept. 29, 1905.
"J. M. Allen, Pres. St. Louis Service & Horse Co., St. Louis, Mo.

"Dear Sir: In answer to your proposition to us under date of September 15th and 29th, beg to say that we will accept same for the equipment of four complete outfits for our salesmen's use as described in your letter for the consideration of $43.00 per month each, and any additional outfits required by us for salesmen's use will be furnished by you at the same price.

"Three outfits to be delivered to our place of business and one to our west end salesman at or near Wellston on the morning of every working day at seven o'clock a. m.

"We will agree to employ this service from you as long as the price and outfits are satisfactory.  The above outfits to be furnished to us beginning October 15th, 1905.

"Yours truly,
"MOFFET-WEST DRUG CO.,
"C. H. WEST, Secretary,"

"Sept. 30, 1905.
"Dear Sir: I am in receipt of your favor of the 29th accepting our proposition of September 15th and 29th, whereby we will furnish you with four storm buggies,

with horses and outfit complete, three to be delivered at your place of business and one to be delivered as may be directed by you later at or near Wellston, on each and every working day at 7 o'clock a. m., at a rate of $43.00 per month each, for a period of two years, beginning October the 15th, 1905, you to have the privilege of ordering additional outfits that may be required upon reasonable notice at the same price.

"We have to-day placed our order for these outfits and will do everything we possibly can to deliver them to you on the morning of the 15th, as above indicated.

"Thanking you for the contract, and assuring you that we shall leave nothing undone to make our relations satisfactory, believe us,

"Very truly yours,

"UNION SERVICE COMPANY,

"By JOHN M. ALLEN,   President."

The petition alleges the terms of the contract said to have been formed by those letters as follows:

"Plaintiff states that during the month of September, 1905, the St. Louis Service & Horse Company, a co-partnership then doing business in the city of St. Louis, entered into a certain two-years contract with defendant, whereby it was agreed that said St. Louis Service & Horse Company should furnish defendant with four (4) storm buggies with horses and outfit complete, three (3) to be delivered at the place of business of the defendant in the city of St. Louis, and the other one (1) to be delivered as defendant might direct, at or near Wellston in the city of St. Louis, on each and every working day at seven o'clock a. m., at a rate of Forty-three Dollars ($43.00) per month each, to cover a period of two years beginning October 15, 1905; and that said contract further provided that defendant should have the privilege of ordering additional outfits upon a reasonable notice to plaintiff and at the same price, should defendant require them from time to time;

and that said contract further provided that defendant should have the privilege, if it so desired, at the expiration of said contract, to renew the same for an additional period of time, or to reduce the number of buggies if defendant so desired."

Subsequent to the correspondence plaintiff purchased six horses, six sets of harness and six new storm buggies to carry out the supposed agreement, began furnishing them to defendant October 15th and they were accepted and used until February, 1906. That is to say, four buggies and horses were, three of them being delivered each day at defendant's place of business in St. Louis and one at Wellston. During said period defendant ordered another buggy and horse and this increase of service was alleged and conceded by plaintiff to have been within the agreement. It was used for a time and then by mutual consent was dropped. In February, 1906, defendant sold its business to the Merrill Drug Company, and on learning of the fact from a newspaper, plaintiff wrote defendant saying plaintiff presumed it would be notified in due time of the assignment of the contract to the Merrill Drug Company. Defendant wrote the following letter to plaintiff:

"St. Louis, Feb. 24th, 1906.
"Mr. J. M. Allen, Pres. Union Service Company, Sixth & Cerre Sts., City.
"Dear Mr. Allen: I am in receipt of your communication of yesterday and also of this morning. Your letter of to-day reached me while Col. Walbridge was in our office. They wish to take over our contract for buggies with you, which Mr. Walbridge stated he would confirm to you to-day.
"As to furnishing Mr. Bausch with Meyer Bros. we, of course, have nothing to do with his arrangements with them. The service for buggies should be charged to Merrill Drug Company, beginning with yesterday morning, February 23rd, 1906.

"Wishing you unbounded success in all of your undertakings and with personal and highest regards from the writer,

"Very sincerely,

"MOFFET-WEST DRUG CO.,

"C. H. WEST, Secretary."

The Merrill Drug Company used three vehicles for a while, but with the declaration that it had not agreed with defendant to take over the contract with plaintiff. In the course of a few months the Merrill Drug Company cut the service to two vehicles and then to one, which it used until the expiration of the alleged contract between plaintiff and defendant. Plaintiff did not release defendant from its obligation, whatever that was, but on March 27th, wrote this letter:

"March 27th, 1906:

"Gentlemen: We have this day effected settlement with the Merrill Drug Company for their February service, they having paid us $28.67; this for three buggies five days each and one buggy one day. You have paid us $132.40, account of February service; total received—$161.07; balance due $10.93. We mailed you a balance due bill a few days ago for $10.80.

"Kindly let us have your check so that we may close our February account, obliging,

"Yours truly,

"J. M. ALLEN."

That letter was not answered nor the demand paid. Plaintiff continued to send defendant bills for the amount of the total service called for by the contract, except the portion for which the Merrill Drug Company paid. There was contradictory testimony about what transpired between the officers of the two companies during the intervals between the first four letters, when it appears said officers negotiated in person as well as by correspondence. Defendant's officer said he told the

officer of plaintiff with whom he dealt, defendant would not take the service for any stipulated term because a previous arrangement of a similar character had proved unsatisfactory. Plaintiff's officer denied said statement was made. As the petition declares on a contract made by the four letters and containing certain averred terms, the question for decision is whether they made such a contract between the parties, and one that bound plaintiff to furnish and defendant to accept and pay for four horses and vehicles over a period of two years. It is contended for defendant no contract ever was formed, inasmuch as the letters show the minds of the officers of the two companies did not meet upon any terms; hence the service actually furnished by plaintiff was not rendered pursuant to any agreement made by the letters for a definite period of service and defendant was bound to pay for only what it accepted. This proposition is sound. The first letter written by plaintiff September 15, 1905, and the second letter also written by plaintiff under date of September 29th, submitted a proposal to furnish six horses and vehicles for $43 a month; "the contract to run two years from date of commencement." The answer sent by defendant under date of September 29th varied the proposed terms in that defendant offered to take four vehicles instead of six, and said it would accept the services "as long as the price and outfits are satisfactory," instead of agreeing to take for two years. That response of defendant to plaintiff's offer did not accept the latter according to its terms and thus create a contract. The next day, September 30th, plaintiff replied saying it was in receipt of the letter of September 29th written by defendant, accepting plaintiff's proposition of September 15th and 29th, and saying further: "whereby we (i. e. plaintiff) will furnish you with four storm buggies and outfits complete . . . for a period of two years, beginning October 15, 1905." Instead of acceding to defendant's proposal to accept the service

as long as it was satisfactory in price and quality, this letter reiterated the term contained in the original proposal of plaintiff that it should continue for a period of two years. Defendant never replied to the letter of September 30th, and as said letter was not an acceptance of defendant's offer, but a variation from the terms of said offer, it is clear no contract was made by the four letters as the petition charges. The law is elementary that when a contract is declared on as having been created by a correspondence, it must appear to sustain the averment, the very terms offered by one party were accepted by the other. [Robinson v. Railroad, 75 Mo. 494; Strange v. Crowley, 91 Mo. 287; 1 Page, contracts, section 46; 1 Parsons, Contracts, *476; Clark, Contracts, p. 24; 1 Beach, Contracts, section 51.] This essential fact never happened in the case at bar. Plaintiff's first offer as tendered in its first two letters was not accepted, but, on the other hand, a counter proposition was submitted by defendant, constituting a new offer. That offer never was accepted by plaintiff, for instead of accepting it, it renewed a term of its original offer to which defendant had signified no assent. But counsel for plaintiff argues the true construction put on the letters is that defendant agreed to accept the service of four vehicles for two years provided the price and outfits were satisfactory, and thus a binding contract was formed; that the condition on which defendant might terminate it before the end of the two years period did not occur, since it is conceded the price and quality remained satisfactory. The obstacle to the acceptance of this argument is that it contravenes the rules of law pertinent to a case where a contract is alleged to have been made by letters. As said, in such a case when a proposal by one party is not assented to by the other party, but instead the response contains a variation of the terms, this becomes a counter offer which must be accepted to form a contract, and if the answer to it departs from the terms proposed in some

respect, another offer is made; as in effect, the learned judge below ruled. [Cangas v. Mfg. Co., 37 Mo. App. 297; Batavia v. Railroad, 126 Mo. App. 13, 103 S. W. 140, and authorities cited in opinion.] The legal effect of the four letters was a matter to be determined by the court and plaintiff was not entitled to have the question of whether a contract had been formed and, if so, upon what terms, left to the jury, inasmuch as the letters alone and no matters of conduct resting in parol were alleged to have created the contract. [Eagle Mill Co. v. Caven, 76 Mo. App. 458, 462.] We find nothing in the correspondence which fairly construed shows defendant ever bound itself for two years or plaintiff ever agreed it might terminate the service sooner on any condition. Furthermore, it is to be observed the terms of the contract as alleged in the petition do not coincide with the terms stated in plaintiff's last letter of September 30th, wherein plaintiff set out the terms as it understood them. The petition alleges the contract provided defendant should have the privilege of renewing the contract at the expiration of two years if it desired to do so, and the privilege of reducing the number of buggies when it desired. Neither of those terms is expressed in the letter of September 30th, and we do not find them in either of the letters except the one of September 15th, which, as said, was rejected, in effect, by defendant's counter proposal of September 29th. It results the contract declared on was not formed by the correspondence, even if some contract was; and, as already stated, in our judgment none was formed.

If the parties made a contract and their minds definitely met on a two-years term, as there is much in the conduct of defendant and the letters written by it after it had sold its business to the Merrill Drug Company to prove, this contract and its terms are to be gathered from the entire correspondence and conduct of the parties, including an implied acceptance to be inferred

148 App—22

from defendant's conduct and letters subsequent to September 30th. As to this matter we do not decide, because the petition seeks relief on an agreement alleged to have been made by the earlier correspondence.

We can perceive no reason why the court should have instructed, at defendant's request, for a verdict in plaintiff's favor for $10.93, as the amount due for service from the date February 22d, when defendant gave notice it would no longer need the service, to March first. If defendant was not bound for two years, it looks like it might cease accepting when it chose, and was no more bound by the letters until March first than to February twenty-second. The judgment for said sum possibly might prejudice plaintiff in another action; but as it was in plaintiff's favor, carried the costs and perhaps is preferred as it stands, we do not feel at liberty to enter a modified judgment until a suggestion is made by plaintiff and defendant notified.

Judgment affirmed. All concur.