THE BELT SEED COMPANY, A CORPORATION, RESPONDENT, v. MITCHEL-HILL SEED COMPANY, A CORPORATION, APPELLANT.—153 S. W. (2d) 106.

Kansas City Court of Appeals.   June 16, 1941.

*Culver, Phillip, Kaufmann & Smith* for appellant.

144

*Strop & Strop* for respondent.

BLAND, J.—This is a suit for damages for the breach of an alleged warranty in the sale by the defendant to plaintiff of certain blue grass seed. There was a verdict and judgment in favor of plaintiff in the sum of $870: Defendant has appealed.

The contract of sale was in writing and made by the exchange of telegrams, letters and confirmations of sale passing between the parties. Plaintiff is a corporation with its principal offices in Baltimore, Maryland, and is engaged, among other things, in the selling of field seeds, wholesale only. Defendant is a Missouri Corporation with its principal offices located in St. Joseph, engaged in the same character of business.

On November 1, 1927, defendant wired the plaintiff at Baltimore, offering to sell Northern Missouri Grown blue grass seed of special weight and 77 per cent purity and 80 per cent germination, "November shipment if deferred ten cents per hundred per month carry charge." On November 2nd, plaintiff wired defendant: "Accept three hundred, nineteen pound minimum analysis figures as quoted deferred shipment carrying charges ten cents." On the same day defendant wired plaintiff: "Have booked as specified shipment not later than March Fifteenth." On November 3rd, plaintiff wrote defendant: "We confirm our exchange of wires as follows: (Here follows a copy of each of the foregoing telegrams and letters.) However, we cannot agree to be limited to March Fifteenth. We will be glad to try to move the car out before that time, but as you did not put any time limit on your offer we do not think that you have the right to put a limit on after your offer was accepted."

On the same day and, of course, prior to the receipt of the letter last mentioned, the defendant mailed to the plaintiff the following confirmation of sale:

"Sold to                          November 3, 1927.
    "The Belt Seed Co.
    "Baltimore, Md.
                      "Confirmation of Sale
    "In accordance with terms adopted by all members of the Wholesale Grass Dealers Association and the American Seed Trade Association, the Mitchelhill Company gives no warranty, express or implied, as to description, quality, productiveness, or any other matter of any seeds we send out and we will not be in any way responsible for crop. If the purchaser does not accept the goods on these terms he must notify us at once and we will give disposition.

    "300 Bags Northern Missouri grown 19 lb Purity 77, Ger. 80, $15.75 per 100 lbs. Freight paid to Baltimore. Shipment March 15th

or sooner if desired. 10c carrying charge added to above price (10c per 100 month.)

"It is expressly understood that this order is not subject to cancellation and also contingent upon strikes, delay, accidents and occurrences beyond our control. Wire us immediately of any error or omission in this contract. Failure to do so constitutes your acceptance of all terms thereof."

The words "The Belt Seed Co. Baltimore, Md. . . . November 3, 1927" and the second paragraph of this communication were in typewriting. The balance of the communication was in rather fine type printing, yet easily read.

On November 9, 1927, defendant wrote plaintiff acknowledging receipt of its letter confirming the sale and stating: "Everything appears to be in order with the exception that we cannot very well deviate from some definite time as to ultimate shipment. In other words, this would not be a contract if otherwise. . . . We are still willing to extend time until April 1st. However, this would be our utmost limit, and if not satisfactory, please wire us immediately upon receipt, and will consider the trade cancelled. . . . We cannot afford to take any chances of carrying this seed over."

On November 12, 1927, plaintiff wrote defendant, acknowledging receipt of its letter of the 9th, and stating that: "Perhaps you are right that there ought to be a definite time limit on the Bluegrass seed contract;" that it likely would need the seed during the winter, but that it would "take it out by the end of April without fail." On November 15th, defendant wrote plaintiff, acknowledging receipt of its letter of the 12th, and saying that it would extend the time of shipment to April; that unless defendant heard from plaintiff to the contrary shipment would be made the last week in April. At the foot of this letter there was printed a disclaimer of warranty in the same character of type as that appearing in the first paragraph of defendant's confirmation of sale, dated November 3, 1927.

The seed was shipped on April 30, 1928. Defendant forwarded a bill with draft attached for the amount of the purchase price of the seed. This bill had printed thereon the same disclaimer of warranty as contained in defendant's confirmation of sale. The bill and draft were duly presented to plaintiff and paid. The deposition of the president of the plaintiff was introduced in evidence by it. He stated that he read the disclaimer of warranty clause in defendant's confirmation of sale and made no reply to it; that "This is a routine clause known familiarly as the Non-Warranty Clause, which is used on the stationery of some of the dealers in seeds, but as the telegram which concluded this contract didn't include it, we did not consider it of any significance."

There is no dispute as to the weight or the purity of the seed shipped. The sole breach of contract relied upon by plaintiff is that the seed

did not test 80 per cent germination, and there was evidence, on the part of plaintiff, tending to show that it did not so test. Plaintiff introduced in evidence the telegrams and correspondence including the typewritten part of defendant's confirmation of sale, but not the printed part. The printed part was offered by the defendant but excluded by the court.

Defendant now contends that the court erred in so excluding it. The court also excluded the printed Non-Warranty Clause appearing on subsequent letters written by the defendant to the plaintiff. Defendant contends that the printed matter appearing in its confirmation of sale was a part of the final contract of sale and should have been admitted in evidence. We think this contention must be sustained. In their correspondence the parties finally agreed that the terms of the contract had not been all agreed upon until the letter written by defendant on November 15, 1927, and plaintiff's petition and its conduct of the trial proceeded upon such theory. In its petition all of the correspondence between the parties, including defendant's confirmation of sale, and ending with said letter, are copied in full, and shows that the contract sued upon is based upon these telegrams and correspondence. Plaintiff introduced in evidence the typewritten part of defendant's confirmation of sale on the theory that the part introduced constituted a part of the contract.

However, the error is not to be classified as material if the matter excluded does not effect, in a material way, the meaning to be given to the rest of the correspondence, including, of course, the typewritten portion of defendant's confirmation of sale. For the purpose of passing upon the point, we will consider the whole confirmation of sale, including the printed, as well as the typewritten, part.

Plaintiff contends that the telegrams and correspondence, including the typewritten part of defendant's confirmation of sale, having contained all of the essentials of an express warranty of 80 per cent germination, although the word "warranty" was not used, the court committed no material error in excluding the printed part. "To constitute an express warranty the term 'warranty' need not be used; no technical set of words are required and it may be inferred from the affirmation of a fact which induces the purchase and on which the buyer relies and on which the seller intended that he should so do." [24 R. C. L. 164.] The affirmation of a seller as to the quality or constituting a description of the kind of the chattel sold may constitute a warranty, if so intended, and relied upon by the buyer. [24 R. C. L., p. 168.] "It has been held that an affirmation by the seller that the seed sold is a certain kind of cabbage seed constitutes a warranty that the seed is of this kind and not cabbage seed of another kind, and the same has been held true as to seed sold as and for a particular kind of turnip seed, and where seed was sold as for rape seed, whereas it was in fact wild mustard seed." [24 R. C. L., p.

175.] However, affirmation of quality or kind do not necessarily, of themselves, constitute a warranty. [55 C. K., pp. 662, 742, 743.]

We think that, in this case, the correspondence between the parties, including the typewritten part of defendant's confirmation of sale, but excluding the printed disclaimer of warranty clauses, taken with all of the facts and circumstances, clearly would give rise to the inference, had it not been for such disclaimers of warranty, that an express warranty of the quality of the seed as to germination was intended by both parties thereto. [Hobdy et al. v. Siddens et al. (Ky.), 248 S. W. 505; Fruit & Truck Ass'n v. Hartman, 146 Mo. App. 155; Cline v. Mock & Knight, 150 Mo. App. 431; Moorehead Seed Co. v. Minn. Seed Co., 139 Minn. 11; Robinson v. Marteldes (Md.), 115 Atl. 757; Wolcott, Johnson v. Mount, 36 N. J. L. 262; White et al. v. Miller et al., 71 N. Y. 118; Hoffman v. Dixon, 105 Wisc. 315, 319.]

In connection with its contention that the printed disclaimers of warranty should not be considered plaintiff cites authorities apparently holding that printed matter on a letterhead, billhead, and the like, and printed notations on the side or bottom thereof, will not be considered as any part thereof where the written matter therein consists, in whole or in part, of a contract. However, these cases, when closely examined, show that, taking the instrument as a whole, including the printed matter, the latter either was not intended to be a part of the contract or was inconsistent with the written portion. [Augusta Factory v. Mente & Co., 132 Ga. 503; Summers v. Hubbard, 153 Ill. 102; Menz Lum. Co. v. McNeeley & Co., 58 Wash. 223; Sturm v. Boker, 150 U. S. 312; Sturtevant v. Fireproof Film Co., 216 N. Y. 199; Olson v. Wabash Coal Co., 126 Ill. App. 253; Constantian v. Mercedes Benz Co. (Calif.), 39 Pac. (2d) 496; Ellis v. Stone (N. M.), 158 Pac. 480; Cohen v. Walworth, 158 N. Y. S. 1081; Denivelle Co. v. Leonard Keil, 140 N. Y. S. 150; Millhiser v. Erdmann, 103 N. C. 27; 12 Am. Juris., p. 780; 6 R. C. L., p. 848; 23 R. C. L., pp. 1329, 1330.] When it is inconsistent with the written part the rule is that the written and printed matter, not being harmonious, the former will prevail. However, there is no rule that the written matter shall take precedence over the printed matter in the absence of any ambiguity between the written and the printed part. The rule is well stated in 13 C. J., pp. 536, 537: "Where, as in the use of printed forms, a contract is partly printed and partly written, and there is a conflict between the printing and the writing, the writing will prevail. Handwriting will under the same rule prevail over typewriting, and typewriting over printing. But where the antagonism is merely apparent, the difference should be reconciled, if possible, by any reasonable interpretation. The rule that effect must be given, if possible, to all terms of a contract applies to instruments partly written and partly printed as well as to those wholly written or wholly printed.

"BILL HEADS AND LETTERHEADS. A printed billhead or letterhead cannot be allowed to control, to modify, or to alter the terms of a contract which is clearly expressed in writing below it. But when there is no conflict, the provisions not being inconsistent, the written provisions will not supersede the printed ones. So the printed heading on an order blank used by plaintiff may be referred to, to show in what capacity he contracted." [See, also, 1916D L. R. A., p. 1072; 6 R. C. L., pp. 847, 848; 12 Am. Juris., pp. 797, 798.]

However, in the case at bar we are not dealing with printed matter upon a letterhead, billhead, or the like, or a side or bottom printed notation, but printed matter contained in the *body* of the instrument in question, defendant's confirmation of sale, *which printed matter was noted by the president of plaintiff upon its receipt.* There can be no question in this case but that the printed matter, contained in the confirmation of sale, as well as the typewritten part thereof and all of the telegrams and correspondence passing between the parties, relating to the warranty, are to be considered and construed together.

"It is the imperative duty of courts to give effect, if possible, to all the terms of an agreement. The construction is to be made on a consideration of the whole instrument, and not on one or more clauses detached from the others; that this principle applies as well to instruments partly printed and partly written, as to those wholly printed or wholly written. Where the written and printed parts may be reconciled by any reasonable construction, as by regarding one as a qualification of the other, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent provisions. Although the written provision of a contract should prevail over one inconsistent with it, and which is a part of a printed form adopted for general use, yet only so far as it is apparent that the parties intended to modify or disregard the printed stipulations will the latter give way." [12 Am. Juris., p. 798.]

So far as we are able to ascertain the authorities are unanimous in holding that, where the word "warranty" or its equivalent does not appear in the contract, but there is some language appearing in it and it, and the surrounding circumstances, standing alone, might give rise to an inference merely that a warranty was intended, such inference cannot be drawn in the face of positive and explicit language in other parts of the contract showing that no warranty was given or intended, such as contained in the nonwarranty provisions in the defendant's confirmation of sale and the letter of November 15, 1927. [Davis v. Bertrand Seed Co. (Calif.), 271 Pac. 123; Leonard Seed Co. v. Crary Canning Co. (Wisc.), 132 N. W. 902; Seattle Seed Co. v. Fujimori (Wash.), 139 Pac. 866; Larson v. Inland Seed Co. (Wash.), 255 Pac. 919; Ross v. Northrup, King & Co. (Wisc.), 144 N. W. 1124; Reynolds & Binding-Stevens Seed Co. v. Busby et al. (Okla.), 247 Pac.

410; Blizzard Bros. v. Growers Canning Co. (Iowa), 132 N. W. 66; Miller v. Germain Seed & Plant Co. (Calif.), 222 Pac. 817.] "Parties may by an express provision in the contract exclude any warranty as to kind from being imported from words descriptive of the kind of seed sold." [24 R. C. L., p. 176.]

"The question of whether a representation is a warranty depends on its having been affirmed as a fact; it must have been understood by the parties as having that character, it must be positive and unequivocal and not merely a vague, ambiguous, and indefinite statement of the seller regarding the property. A representation of fact made to induce the sale, and to be relied on, and which is relied on by the buyer, is a warranty *unless accompanied by an express statement that it is not so intended*, at least if the representation is understood by the parties as an absolute assertion." (Italics ours.) [55 C. J., pp. 677, 678, 679, 680. See, also, 24 R. C. L., pp. 164, 165.] We are of the opinion that, under all of the circumstances, the statement by defendant that the seed would germinate 80 per cent was merely the expression of an opinion. [Davis v. Bertrand Seed Co., *supra*, l. c. 526.].

Among the cases cited in the briefs are Edgar v. Breck & Son, 172 Mass. 581, and Moorehead Seed Co. v. Minn. Seed Co., 139 Minn. 11. In the Massachusetts case a contract of warranty had been entered into and, subsequently, a statement, on a printed billhead, was sent to the buyer with the seeds, stating that the seller did not warrant them. It was held that the printed matter on the billhead could have no effect unless it gave rise to the inference that the old contract had been rescinded and a new one constituted by mutual agreement, and such an inference raises a question of fact for the jury. [On the question of modification of contracts by conduct see 13 C. J., p. 591.] There is no such situation in the case at bar. No contract was entered into until after defendant's confirmation of sale had been received by plaintiff.

The Minnesota case, Moorehead Seed Co. v. Minnesota Seed Co., is based on Edgar v. Breck & Sons, but the facts, in our opinion are different. In the Moorehead case there was evidence by the buyer, denied by the seller, tending to show an oral contract in which the seller *guaranteed* and *warranted* wheat seed as to germination. However, as the contract was oral, under the statute of frauds, until the acceptance of the seed, or payment of it, the contract was open to amendment. In the meantime the seller mailed to the buyer a confirmation of sale and it and the invoice and shipping tags, contained printed disclaimers of warranty. The court referred to the oral warranty as an express warranty and stated that if the warranty was actually made, a question of fact, it should be given effect irrespective of the printed disclaimers. The Minnesota case differs from the Massachusetts case, in that, in the former, the contract had not been

consummated until after the time the disclaimers of warranty were made, while, in the latter, a final contract had been entered into and the seller· sought to modify it by a disclaimer of warranty. Of course, the Minnesota case is not like ours. There it was held, in effect, that the oral part of a contract takes precedence over a printed part, if.the two are inconsistent. It will be noted that in that case, unlike the one before us, the word "warranty" was used, which is a direct or positive word of warranty. Nothing is left to inference when such a word is used in this connection. In the case at bar, the contract was evidenced by writing in every detail and its construction was one for the court and not for a jury. [24 R. C. L., p. 165; Wolcott, Johnson v. Mount, *supra*; T. M. James & Son v. Marion Fruit Jar, etc., 69 Mo. App. 207, 211; Union Serv. Co. v. Drug Co., 148 Mo. App. 327, 337; 13 C. J., pp. 788, 789; 55 C. J., p. 858; Reynolds v. Binding-Stevens Seed Co., *supra*.] In fact, plaintiff not only concedes, but insists, that the construction of the contract in the case at bar is one for the court exclusively.

However, plaintiff contends that the cases we have cited, in support of our decision that the non-warranty clause shall govern in this case, all involve implied warranties and not express warranties. Plaintiff admits that if the warranty to be inferred from that portion of the telegrams and correspondence, excluding the non-warranty ·clause is an implied warranty, then the non-warranty clause would overcome the implication of such a warranty. This, we think, when properly analyzed, constitutes an admission that plaintiff is not entitled to recover in this case. We note that, in discussing these cases, plaintiff quotes from some of them where the words "inference" of warranty is used and plaintiff is of the opinion that a warranty arising from an inference of fact is the same as an implied warranty. However, plaintiff quotes the following from International Shoe Co. v. Lipschitz, 72 S. W. (2d) 122, 125: "It is true that he did not use the term 'warranty' in his pleading, but such omission avails plaintiff nothing in its present contention. To constitute the statement or averment of an *express warranty,* no technical or specific form of language is required, but the existence of the warranty may be *inferred* from the affirmation of a fact which has induced the purchase, and on which the purchaser was intended to and did rely." (Italics ours.)

While, it is true, that some of these cases refer to the warranties therein considered as implied warranties, as a matter of fact, they were not, strictly speaking, implied warranties and the word "implied" was used in a loose, and not a technical, sense. Plaintiff is correct in saying that the warranty upon which it rests its claim in this case is an express warranty yet the word "warranty" or its equivalent, is not used, but the words used, if we exclude the disclaimers, taken with the surrounding facts and circumstances, raise no more than inferences or implications of warranty. In some of the

cases it is said that the words of description relating to the kind or representation of quality, in the seed sold, give rise to an implied warranty, yet, the writers of the opinions were not discussing, technically, implied warranties, but express warranties, gleaned from the words used and the surrounding circumstances, and arrived at by inference. The character of warranty we are now dealing with, or an express warranty, not an implied warranty, is made manifest when we remember that express warranties are based upon the intention of the parties, while, implied warranties are obligations which the law raises upon principles foreign to the actual contract. Implied, unlike express, warranties are arrived at by operation of law and conclusions announced by the court upon established facts. For the sake of convenience, merely, such an obligation (an implied warranty) is permitted to be enforced under the form of a contract. "In some cases where the buyer relies on affirmation by the seller without the use of technical words of warranty to found his claim of a warranty of qualify or condition, the courts have inadvertently spoken of the case as one of implied warranty; it is evident, however, that this is not properly one of implied warranty but of express warranty; and this class of cases is considered in the treatment of express warranties." [24 R. C. L., p. 178.] Ruling Case Law treats affirmations in the sale of seeds, by description as to kind, as constituting express warranties. [24 R. C. L., p. 175.] Ordinarily an implied warranty cannot exist where there is express warranty. However, this is not always true. [See Alvin Fruit & Truck Assn v. Hartman, 146 Mo. App. 155; where also a warranty by mere affirmation was held to be an express warranty.] An implied warranty arises when no technical word of warranty may be used, and no affirmation or representation concerning the quality of the article sold, but the law, in a proper case, implies a warranty, such as that seeds are fertile and are reasonably free from impurities, noxious weed seeds and the like. [See 24 R. C. L., p. 199.] Of course, there can be no implied warranty where the sale is attendant with a non-warranty provision, such as involved in the case at bar and, as implied warranties are based wholly upon implications of law, as distinguished from inferences or implications of fact, it is necessary, in any case, before it can be decided whether actually there is an implied warranty, to find out the meaning of the contract. So the matter all goes back to the question of interpreting the terms of the contract itself.

Being of the opinion that, construing the telegrams and correspondence together, including the whole of defendant's confirmation of sale, no warranty of any kind was intended, we conclude that there was material error in the action of the court in excluding the printed matter in question constituting a disclaimer of warranty. When a point of this kind is made, and sustained, ordinarily, it results merely in remanding the cause for another trial but, it appearing, as a matter

of law, that plaintiff cannot recover in this action upon any theory, the judgment should be reversed, and it is so ordered. [White v. Kentling, 134 S. W. (2d) 39.]

All concur.