[1] This is an action to recover money deposited under a real estate contract. The case was tried to the court without the aid of a jury. Judgment was rendered in favor of plaintiff for the sum of $1250, and defendant has appealed.
[2] The facts are that on July 14, 1947, the parties entered into a written contract wherein plaintiff agreed to purchase from defendant a portion of Lot 105 in The City of Columbia, Missouri, the street address being 802 Cherry. The purchase price was $12,500, payable as follows: $1500 on execution of the contract, $3000 on delivery of the deed and the balance of $8000 to be secured by a first deed of trust.
[3] The contract contained the usual provisions calling for delivery to plaintiff of an abstract showing merchantable title, the time within which it was to be examined and defects, if any, corrected. It then provided that a deed containing the usual warranties should be delivered to plaintiff on August 1, 1947 and, on the same date, he should be given possession. It further provided that, in the event either party should fail to duly perform his part of the agreement, the party defaulting should forthwith pay to the other party, as liquidated damages, 10% of the agreed purchase price. Then follows this clause: "This sale is subject to Mr. Leo Collins (the purchaser) obtaining a 5% beer license within the next 60 days for a business on the above described real estate."
[4] On July 17, 1947, plaintiff signed and filed with the City Collector an application for a 5% beer license at 802 Cherry Street. Attached to the application was a check signed by plaintiff in the sum of $50.50 which was to be in payment of the license when issued. The next day plaintiff directed his son, James Leo Collins, to strike plaintiff's name from the application and make it in the name of the son alone. This was done. At that time plaintiff had one 5% beer license at another location in Columbia and said he felt that this fact might keep him from getting another and, "inasmuch as my son was going to operate it anyway, I wanted the application to be in his name." This other establishment called *Page 131 
"Collins Tavern" was owned by plaintiff, but operated by the son, James Leo Collins. Plaintiff was engaged in the jewelry business.
[5] The records in the City Clerk's office show the filing of the application; that it was referred to the Police Committee, which Committee reported that said application could not be considered as a building had not been constructed on the premises. The City Collector testified that the application was presented to the City Council and rejected by the Council on August 4, 1947. On the application appear the words: "Rejected by City Council August 4, 1947. Bldg. not available."
[6] Plaintiff testified that he refused to complete the real estate transaction after the City Council denied the application and so informed the defendant.
[7] Plaintiff's son, James Leo, testified that he knew the Police Committee had recommended that no license be granted to that street address because of the absence of a building and, thereafter, he consulted the City Attorney, the Mayor, and Mr. Hopper, a member of the City Council, with reference to getting a license, but all to no avail.
[8] Defendant testified that at the time he negotiated the contract with the plaintiff he knew that there was a clause in it that the sale was conditioned upon the purchaser getting a 5% beer license to be used at this address; that he "helped plaintiff try to get this beer license;" that he "saw some of the City Officials and solicited their interest in this beer license," and that he was "told that no license could be issued for this location until a building was put up."
[9] The evidence further shows that on December 12, 1947, defendant tendered plaintiff a deed and abstract of title to the real estate in question and demanded of plaintiff that he proceed with the real estate transaction. Plaintiff refused to accept said deed and pay the balance of the purchase price. At the trial plaintiff acknowledged that defendant had repaid him $250 of the $1500 down payment.
[10] The court found, among other things, that the reasonable market value of the property on the first day of August, 1947, was $11,500; that plaintiff, in good faith, made application for a 5% beer license, as provided in said contract; that he was unable to procure a license within sixty days or at any other time, and that on August 1, 1947, plaintiff refused to pay the balance of the purchase price or to accept the conveyance of the property. The court also found that the defendant was willing and able to perform said contract and convey said real estate to plaintiff; that defendant refunded $250 of the $1500 down payment to plaintiff, and that defendant stood ready and willing to perform said contract and tendered to plaintiff a warranty deed, but plaintiff refused to accept said deed and pay the balance of the purchase price. The court also found that by the provisions of said contract it was the intention of the parties that the contract should not be in force and effect or be performed unless the plaintiff was able to procure a beer license; and that plaintiff demanded payment of the $1250 balance of the down payment and that defendant refused to pay same.
[11] In reviewing the record we are mindful of the mandate of the statute, Laws 1943, p. 388, Sec. 114(d), Mo.R.S.A. § 847.114(d), that, where a case is tried to the court without the aid of a jury, as here, the judgment shall not be set aside "unless clearly erroneous".
[12] Defendant's main contention is that plaintiff failed to perform his part of the contract, and cases are cited in support of the rule, that before a party to a contract can recover on the contract, he must show a performance on his part or an excuse for his non-performance. With this rule we find no fault.
[13] More specifically, his claim is that, assuming that the provision in the contract that it would be void if plaintiff did not obtain a 5% beer license within 60 days is a valid contingency; nevertheless, plaintiff is not entitled to take advantage of said contingency because "he did not do anything toward obtaining such a license;" that is, the application was made in the name of plaintiff's son, James Leo Collins; that plaintiff did not make any attempt to secure *Page 132 
a license in his own name and that the acquisition of a license of this character is personal. This contention, under the facts, is without merit. The fair inference is that defendant knew that the application was in the son's name and that he was to operate the place. Defendant was asked:
[14] "Mr. Roth, did you make an effort to help Mr. Collins obtain a beer license? A. Yes, sir.
[15] "Q. Were you successful in helping them get a beer license? A. I think I was.
[16] "Q. For what reason were you unable to get one? A. Well, they told me it would be necessary for them to build a building down there." In the first place it was the license to sell beer at this location that all parties were interested in obtaining. It was not in whose name the license was issued so long as it was issued for use on the lot at 802 Cherry Street. It was the fact of the issuance of the license within 60 days that concerned the parties and not the name of the person to whom it was to be granted. In the second place, if the City Council denied the license because of the absence of a building, then it obviously would have made no difference in whose name the application had been made. We rule this contention against defendant.
[17] Defendant's next point is that the provision in the contract relieving plaintiff from performance in the event a beer license was not obtained was void because of repugnancy with the provisions in the contract to the effect that the contract was to be fully completed on August 1, 1947, and on which date the deed was to be delivered and the balance of the purchase price paid. As we view it, the whole contract of sale was made subject to the contingency that a 5% beer license be granted by the City Council within 60 days. This seems to be the construction put upon it by the parties. Defendant himself testified that he knew that the sale was conditioned upon plaintiff getting a 5% beer license to be used at 802 Cherry Street. Knowing this, he helped plaintiff and his son try to get the license by interviewing some of the City Officials and soliciting their interest in the matter. However, even if there is an inconsistency between other clauses in the contract and the clause making the condition, the clause making the condition having been written into a printed form of contract on the typewriter by the parties before the contract was signed means that they intended to be governed by that contractual provision before the contract would become effective. This court held in Belt Seed Co. v. Mitchelhill Seed Co., 236 Mo.App. 142, 153 S.W.2d 106, that where a contract is partly printed and partly written, as in the use of printed forms, and there is a conflict between the printing and the writing, the writing will prevail; that handwriting will prevail over typewriting and typewriting over printing, and where there is any conflict the difference should be reconciled, if possible, by any reasonable interpretation. Applying this rule to the instant case, it seems clear that both parties entered into this contract on the condition that there should be a contract of sale only in the event the license be obtained within 60 days.
[18] Finally, it is asserted by defendant that plaintiff failed entirely to show that he was unable to obtain the license. This is not borne out by the evidence, as we have shown.
[19] We are of the opinion that the evidence supports the findings of fact made by the trial court and that the judgment should be affirmed. It is so ordered.
[20] All concur. *Page 133