## KEYES FARM & DAIRY COMPANY, Appellant, v. E. M. PRINDLE.

### Division Two, April 8, 1913.

1. **CONTRACTS: Construction.** A contract between the defendant, a dairyman, and the plaintiff, a milk company, is construed and *held* not to obligate the defendant to deliver to plaintiff all the milk, cream, etc., produced on his dairy farm.

2. ———: ———: **No Conflict in Evidence: For the Court.** Although a contract be conceded to be in itself ambiguous, its construction is nevertheless for the court and not for the jury where there is no real conflict of evidence upon any of the essential facts necessary to be considered in construing it.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*Bernard Greensfelder* for appellant.

*Lyon & Swarts* and *Dwight D. Currie* for respondent.

BLAIR, C.—This is an appeal from a judgment for defendant in an action for damages for defendant's refusal to ship to plaintiff the milk produced by him at his dairy in Green county, Illinois, the petition alleging that under the contract hereinafter set out defendant was obligated to deliver plaintiff his entire product. Defendant concedes the contract bound him to ship plaintiff certified milk and cream in quantities sufficient to meet the requirements of the customers plaintiff had secured for those particular commodities, but avers other shipments were to be made at his option. Defendant offered to continue to perform the contract according to his construction of it, but this did not satisfy plaintiff and this suit followed.

*Contracts: Construction.*

During the two years prior to the execution of the contract in question defendant shipped milk and cream to plaintiff, a corporation engaged in selling dairy products to consumers in St. Louis. Meanwhile the St. Louis Pure Milk Commission (hereafter referred to as the Commission) had been established, had adopted and registered as a trade-mark the words "Certified Milk" and had prescribed numerous regulations to be observed by dairies in producing and marketing milk as a condition precedent to granting them permission to sell milk in St. Louis as "certified milk." In addition to the requirements as to sanitation, the exclusion of tuberculous animals from the herd, etc., "certified milk" was required to be bottled at the dairy and the bottles packed in ice. Accompanying each bottle was a certificate in the form of a printed slip furnished by the Commission, which only those dairies complying with the Commission's regulations were authorized to use. Milk thus certified sold in St. Louis for fifteen cents per quart.

In the spring of 1906 the manager of plaintiff company conceived the idea of attempting to build up a certified milk business, plaintiff not then receiving any milk of that character though marketing large quantities of uncertified milk, cream, etc. To accomplish this purpose plaintiff took up the matter with defendant and these negotiations resulted in the execution, in March, 1906, of the contract for the alleged breach of which this action was brought. The essential parts of the contract are:

"Party of the first part (Prindle) agrees to supply party of second part (Keyes Farm & Dairy Company) with milk and cream from his dairy herd in Green county, Illinois, according to rules, regulations and requirements of the St. Louis Pure Milk Commission, as specified in printed circular of information concerning the requirements of the St. Louis Pure Milk Commission for certified milk—a printed copy of which

is hereto attached and made a part of this agreement. And party of second part agrees, for and in consideration of the sum of $1 to party of first part in hand paid, the receipt of which is hereby acknowledged, to purchase from party of the first part his entire product of pure milk and cream, or either, for the term of five years from date hereof, delivered daily in sweet and merchantable condition, at prices and terms hereinafter mentioned, delivered f. o. b., Union Station, St. Louis, Missouri.

"For certified milk in cans furnished either by party of second part or at his request, through St. Louis Pure Milk Commission, 16 cents gallon. For skim milk in cans furnished to party of first part, 7 cents gallon. For cream in such denominations of butter-fat percentage as may from time to time be ordered, 3 cents per point, according to Babcock test, at 3 cents per p(o)int.

"For certified milk in bottles furnished by party of second part, f. o. b., Union Station, St. Louis, Mo., packed in boxes furnished by party of first part, said milk to be bottled, labeled and shipped in boxes with cracked ice surrounding the bottles, 9 cents per quart, f. o. b., Union Station, St. Louis, Missouri, conditioned, however, that if party of second part secures contract to furnish the St. Louis Pure Milk Commission, St. Louis, Missouri, with its requirements for milk, skim milk, and cream, that party of second part shall and will pay unto the party of the first part, in regular monthly settlement, one-half of net profits derived from sales to the St. Louis Pure Milk Commission for season of 1906, or any renewal or extension of such contract with said Commission during the term of this contract; and conditioned, further, that party of second part does hereby agree to take not less than one case of bottled certified milk daily, first shipment to commence not later than April 10, 1906, and to increase orders for such milk as fast as demands and require-

ments of customers of party of second part necessitate, and in consideration of the extra expense entailed by party of the first part in remodeling his barn and premises to conform to requirements of St. Louis Pure. Milk Commission, party of the second part does hereby obligate itself not to produce from its own farm, or purchase from others, any certified milk in bottles until the entire supply of party of the first part shall first have been exhausted by sales to party of second part, and party of second part further hereby obligates itself to take any excess of milk and cream, skim milk, or either, as may be ordered, during the term of this contract, which is not required by party of second part, in bottles or in cans, by sale to St. Louis Pure Milk Commission, produced by party of first part, delivered in cans of party of first part, in good condition, f. o. b., Union Station, St. Louis, Missouri, at the following prices: For cream, 3 cents per point; for whole milk, not less than 3 80/100 butter-fat, 16 cents per gallon; for skim milk, 6 cents per gallon. Party of the second part is to pay for any advertising in connection with the sale of certified milk, and no portion of such cost for advertising shall be charged against party of first part in settlement for the monthly profits from sale to St. Louis Pure Milk Commission, in event contract is awarded to party of second part to furnish said Commission with its requirements for milk, skim milk, or cream for season of 1906, or any other period covered by the terms of this agreement.''

July 23, 1906, defendant's dairy was inspected and approved by representatives of the Commission and defendant authorized to use the Commission's trademark and market his product, as certified milk, through plaintiff as his St. Louis agent. In his contract with the Commission defendant bound himself to observe the Commission's regulations and plaintiff contemporaneously executed a bond to secure its own observance, as defendant's agent, of all regulations of the

Commission applicable to agents of approved dairies selling certified milk. At the time of the execution of the contract between them plaintiff, with defendant's knowledge, was endeavoring to secure a contract to furnish milk to the Commission for the year 1906. This endeavor was unsuccessful. In August, 1906, defendant began shipping to plaintiff certified milk, bottled and packed as required by the Commission, in sufficient quantities to supply those of plaintiff's customers who desired such milk. In May, 1907, plaintiff secured the contract to supply the Commission with milk until February, 1908, and obligated itself to furnish milk from defendant's dairy or some other approved by the Commission, this contract binding plaintiff to observe the Commission's requirements for certified milk, etc., except plaintiff was expressly granted permission to ship the Commission's milk in sealed cans instead of bottles. Thenceforward defendant shipped plaintiff bottled milk as before and also shipped milk in cans for the Commission's own use. On September 21, 1907, the Commission rescinded its contract with plaintiff. At this time plaintiff was selling to consumers about 108 quarts of certified milk from defendant's dairy but much the greater portion (sixty-five or seventy gallons) of the milk defendant produced was required to supply the Commission.

During the period from the execution of the contract between plaintiff and defendant until the inspection and approval of defendant's dairy and the execution, July 23, 1907, of the contract between plaintiff and the Commission, defendant could not produce certified milk, but no complaint is made or damages claimed for that reason, the contract between plaintiff and defendant admittedly having been entered into in anticipation of defendant's thereafter bringing his dairy up to the Commission's standard and in expectation of some delay in doing so. The real foundation of plaintiff's action is its claim that the contract en-

titled it not only to such certified milk as its customers required but also to all the rest of the milk defendant produced and that this residue it was by the contract entitled to *require* defendant to ship to it at St. Louis in cans. It is not contended defendant, under the Commission's regulations, had the right to ship or that plaintiff had the right to market any milk as *certified* milk except that bottled at the defendant's dairy and shipped in accordance with the Commission's regulations relating thereto, except that which by special permission in its contract with the Commission in May, 1907, plaintiff was permitted to have shipped *for the Commission* in sealed cans instead of in bottles. That the term "certified milk," so far as defendant had any right to ship it and plaintiff to sell it in St. Louis (with the single exception mentioned) meant and means *bottled* milk, produced at an approved dairy, shipped in the prescribed way and sold as received, is incontrovertibly established on the record in this case.

By agreeing to supply plaintiff with milk and cream "according to the rules, regulations and requirements of the St. Louis Pure Milk Commission," as by the contract he did agree, defendant simply agreed to supply plaintiff with certified milk, since compliance with the Commission's rules, regulations and requirements was exactly what was necessary to enable defendant to produce and furnish to plaintiff and plaintiff to sell in St. Louis "certified milk."

It is true prices are fixed by the contract for certified milk in *cans* but this provision itself discloses that it was inserted in contemplation of the anticipated contract to furnish milk to the Commission and in anticipation of the exception subsequently made in that contract when it was secured. The subsequent provision obligating defendant to take, at designated prices, any *excess* of milk, cream, etc., produced by defendant and "which is not required by party of second part in bottles or in *cans, by sale to St. Louis Pure*

*Milk Commission,"* further dispels any idea that defendant's covenant to supply certified milk to plaintiff obligated him to ship any save bottled milk except that furnished in cans to the Commission. It is clear that the parties were contracting with reference to two things, i. e., (1) certified milk sufficient to fill plaintiff's requirements and (2) any milk defendant might produce in excess of the quantity necessary to supply such certified milk customers as plaintiff might secure. Defendant bound himself to furnish to plaintiff certified milk in sufficient quantities to meet the demands of plaintiff's customers for that commodity. The excess of his product, however, defendant clearly had the option to require plaintiff to take but did not obligate himself to sell it to plaintiff. The consideration for this is expressly stated to be the expense to which defendant was put in remodeling his barn to conform to the requirements of the Commission. In substance the contract was that in consideration of defendant's bringing his dairy up to the Commission's standard and supplying plaintiff with such quantity of certified milk as its customers required, plaintiff agreed to pay certain prices for certified milk and to guarantee defendant a market for the excess of his product, if any. The purpose of the contract was to develop a demand for certified milk, which, finally, would equal the entire quantity of milk defendant might produce. This appears from the contract as well as from the evidence adduced by both parties. There can be no dispute about it. In the beginning plaintiff had practically no sale for certified milk. That defendant's product would exceed plaintiff's requirements until customers were found was concededly in the contemplation of the parties. For such excess plaintiff simply guaranteed a market at designated prices.

Even if it could be successfully contended that the Commission's regulations permitted, generally, the shipment, from the dairy to St. Louis, of certified milk

in cans sealed and certified, yet the record discloses that plaintiff, after the cancellation of the Commission's contract with it, had no customers for certified milk in that form and the contract did not bind defendant to supply plaintiff with certified milk for which it had no customers.   There is no pretense plaintiff had, after September 21, 1907, customers for any certified milk save that shipped in bottles.   But the contract, viewed in the light of the indisputable facts, is too clear to warrant discussion.   It may be, as suggested in a motion filed, that portions of the evidence have been omitted in printing the record but we have no recourse save to pass upon the record as filed in this court. There is no real conflict of evidence upon any of the essential facts necessary to be considered in construing the contract involved, and in such circumstances, though the contract be conceded to be in itself ambiguous, its construction is nevertheless for the court and not the jury.   Plaintiff was entitled to all the certified milk it needed to supply its customers.   This defendant was willing and offered to continue to furnish, but plaintiff demanded the shipment to it of the excess of defendant's product, to which it clearly was not entitled, and it was upon this rock the joint enterprise went to pieces.   Plaintiff had no cause of action for damages.   This conclusion renders it unnecessary to examine the instructions, since the court should have directed, in the first place, a verdict for defendant.

The judgment is affirmed.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court.  All of the judges concur.