**J. T. O'DONNELL (Plaintiff) Appellant,**

**v.**

**Stanley EPSTEIN, Philip R. Fuchs, and Richard T. Daly, Copartners, doing business as Stanley Epstein & Associates, Defendants,**

**Stanley Epstein, Respondent.**

**No. 29051.**

St. Louis Court of Appeals.

Missouri.

June 14, 1955.

Frank Coffman, E. H. Schwarzenbach, Thos. M. Gioia, St. Louis, for appellant.

Echeal T. Feinstein, Joseph T. Hersby, St. Louis, for respondent.

WOLFE, Commissioner.

This is an action for a commission alleged to be due the plaintiff under a contract of employment as a real estate salesman. At the close of his case the plaintiff dismissed as to defendants Fuchs and Daly. There was a verdict and judgment in favor of the plaintiff and against Epstein, the remaining defendant. The court granted a new trial upon the motion of the defendant and the plaintiff prosecutes this appeal.

The plaintiff alleged in his petition that he was a duly licensed real estate broker and that Epstein, Fuchs and Daly were partners, doing business under the name of Stanley Epstein & Associates. He alleged that these partners owned some property on Highland Avenue in the City of St. Louis, and that they employed him by a written contract to find a purchaser for the property and to sell it. The petition further avers that the plaintiff procured a purchaser ready, willing and able to buy the property, and that a contract of sale was entered into whereby the defendants agreed to pay to the plaintiff $700 as commission. It is then stated that the defendants refused to close the sale and the plaintiff prayed judgment for the $700 alleged to be due him by virtue of the contract.

The defendants, all answering separately, denied that they were partners doing busi-

ness under the name of Stanley Epstein & Associates and denied that they were owners of the real estate in question. The answer of Epstein stated that the property described in the petition was owned by himself and his wife.

The plaintiff testified that he was looking for some property to sell to a client when he saw a house at 4954 Highland Avenue in the City of St. Louis. There was a sign in front of the house bearing the name of Stanley Epstein & Associates. The plaintiff went in and was met by a man named Silver who told him that some repairs were being made at that time and that if Mr. O'Donnell wanted to show the house to a client it would be better if he brought the client there in about a week when the repairs would be finished. On about August 18, 1951, O'Donnell brought a widow named Mrs. Walthall to see the place and she wanted to buy it. He later went to the office of Stanley Epstein & Associates and there talked to Mr. Fuchs. O'Donnell said that he thought Fuchs owned the property. They discussed the price. When the price was agreed upon he told Fuchs he would want a commission of $700 and Fuchs told him that he would have to consult Mr. Epstein about that. Fuchs said that Mr. Epstein was in Michigan, and that he would phone him. After a phone call Fuchs said that the commission would be paid. A form designated "Offer to Purchase" had been filled out and Fuchs wrote thereon "and agree to pay to J. T. O'Donnell & Son $700.00 commission". O'Donnell had a cashier's check payable to J. T. O'Donnell & Son which he had procured from his client and he endorsed this check over to Stanley Epstein & Associates and gave it to Fuchs. The paper signed at this time and upon which the plaintiff bases his action is the "Offer to Purchase" mentioned. It was designated upon trial as plaintiff's Exhibit A and is as follows:

"Offer to Purchase

"St. Louis, Mo. August 20, 1951

"Received of Mary Walthall the sum of Five hundred and no/100 ($500.00)

Dollars, as earnest money and part purchase money for a certain parcel of improved property, lying in the City of St. Louis, State of Missouri, and having a front of 80 feet on the South side of Highland Ave. by a depth of 138 feet. Together with all improvements thereon, numbered as 4954 Highland Avenue, which property is this day sold to said Purchaser, subject to the approval of the owner, and not otherwise, for the total sum of Fourteen thousand nine hundred fifty and no/100 Dollars, payable as follows Four thousand five hundred and no/100 Dollars, cash, of which the above mentioned earnest money is a part, and the balance as follows $10,450.00 payable at $125.00 per month said payments to include principal pay-off, interest, taxes and insurance. $7500.00 of the above amount to be in a First Deed of Trust for 12 years and $2950.00 to be payable for 35 months with balance due on 36th month. With interest on the deferred payments at the rate of 6%; said deferred payments to be secured by first and second Deeds of Trust on said premises. The title to said property to be perfect, and to be conveyed by Warranty Deed, subject to restrictions of record, free from liens and encumbrances, except the taxes for the year 1951 which are to be adjusted to the date of transfer, as are any rents, interest, insurance and water license.

"If upon examination the title be found imperfect, and cannot be perfected within a reasonable time, said Purchaser is to be paid a reasonable cost of examining the title, and the earnest money is to be refunded.

"This sale under this contract to be closed on or before September 15, 1951, at the office of Stanley Epstein & Associates, and if not closed by that time, owing to the failure or neglect of the Purchaser to comply with the terms herein, the above mentioned earnest money is to be forfeited to Seller, but such forfeiture shall not release said Purchaser herein from any liability for

the fulfillment of this contract of sale, if said Seller shall elect or enforce fulfillment of the same.

"I hereby offer to purchase this property on the above terms and conditions, and authorize Stanley Epstein & Associates to have the title examined, for which I agree to pay the usual charges.

"X Mary Walthall
"_____

"Purchaser

"Received $500.00 earnest money
"Stanley Epstein & Associates.
"By P. R. Fuchs

"Accepted on above terms and conditions and agree to pay to J. T. O'Donnell & Son $700.00 commission.
"_____

"Owner"

O'Donnell stated that he did nothing further after the above instrument was executed until he received a letter, the body of which was as follows:

"As per our phone conversation of two weeks ago, and inasmuch as we were unable to make your deal on 4954 Highland Avenue (as you were then advised); we are still holding your $500 earnest money which we will return to you whenever you stop in our office and return our earnest money receipt given to you.

"Very truly yours
"Stanley Epstein & Associates
"Philip R. Fuchs."

O'Donnell said that he then went down to see Fuchs and was informed by him that Mrs. Walthall's credit was not good and for that reason they could not make the deal. At this juncture O'Donnell said that he asked Fuchs why he had not told him this and that he could have obtained a loan for his client. Then Fuchs told him that the property had been sold to a man with whom he had been negotiating before Mrs. Walthall's offer was made.

The plaintiff also called Fuchs and Epstein to the stand and both testified that the payment of a commission to O'Donnell was contingent upon Mrs. Walthall being able to establish credit to finance the transaction. Fuchs testified that he never represented that he had any authority to close the deal and informed O'Donnell that the contract would have to be approved by Mr. Epstein. He said that he had telephoned Mr. O'Donnell's office many times in order to get him to take his client to the Clayton Federal Savings and Loan Association to see if she could pass its credit requirements for a loan but he was unable to reach O'Donnell. Epstein was in Michigan all this time, but he had left a deed to the property signed in blank by himself and wife in which Fuchs, at his direction, could insert the name of the purchaser.

Plaintiff closed his case by taking the stand again and testifying that Fuchs never told him to take his client to the Clayton Federal Savings and Loan Association.

The defendant's evidence was to the effect that in consummating a sale of real estate it was their custom to get a verbal commitment to finance a piece of property subject to a credit check of the purchaser. They had done this with the Clayton Federal Savings and Loan Association on the property in question but plaintiff's client never made application for a loan. Both Fuchs and Epstein again testified that the contract was at all times subject to Epstein's approval and that O'Donnell was so advised.

As stated, the petition alleged that the defendants as partners owned the real estate in question, but without amendment of the petition the plaintiff, at the close of the evidence, dismissed as to all defendants with the exception of Epstein, and proceeded against him on the theory that Fuchs as his agent had employed the plaintiff in writing to sell the property.

 The court sustained the defendant's motion for a new trial on the ground that it had erroneously admitted testimony of the plaintiff concerning statements made by Fuchs relating to his agency. It is, of course, true that declarations of an agent

made out of court can neither establish the fact of his agency nor the scope of it. State ex rel. Massman v. Bland, 355 Mo. 17, 194 S.W.2d 42; J. R. Watkins Co. v. Lankford, 363 Mo. 1046, 256 S.W.2d 788. The testimony of the plaintiff, however, seemed to deal with statements made by Fuchs relating to details of the proposed sale rather than to his agency. Considerable confusion resulted from the fact that at the time the plaintiff testified he was proceeding upon the theory that Fuchs, as a partner of Daly and Epstein, was selling property that they owned as partners. It appears that plaintiff testified to no declaration by Fuchs which came within the rule.

The defendant, however, asserts here, as he did in his motion for a new trial, that the court erred in submitting to the jury the question of whether or not there was a contract in writing under which the plaintiff was entitled to recover.

■ Plaintiff chose to rest his entire case upon the paper designated Exhibit A and captioned "Offer to Purchase". This he does upon the theory that it places him in the position of an agent employed to sell the property and consequently entitled to a commission upon producing a purchaser ready, able and willing to buy. The contract, however, is in plain words, the meaning of which is generally understood. Therefore the construction of it is a matter of law for the court and not the jury. Ross v. St. Louis Dairy Co., 339 Mo. 982, 98 S.W.2d 717; Belt Seed Co. v. Mitchelhill Seed Co., 236 Mo.App. 142, 153 S.W.2d 106; Keyes Farm & Dairy Co. v. Prindle, 249 Mo. 600, 155 S.W. 391.

It will be noted that the contract is in effect nothing more than a receipt for earnest money on an offer to purchase the real estate and that by its express terms it provides that it is subject to the approval of the owner. A space is provided for the owner to sign an acceptance of the offer. Above the line for the owner's acceptance was the addition in writing to the printed form, which said, "and agree to pay to O'Donnell & Son $700.00 commission". This was all part of the one offer which was without effect unless accepted by the owner.

■ ■ The plaintiff cannot by force of this written instrument bring himself into the position of an agent employed to sell property on certain terms and thus be entitled to recover when he produces a willing purchaser able to meet those terms. This is a special contract relating to one particular purchaser and relates that it is "subject to the approval of the owner". Since the contract in writing is so limited and the plaintiff relies solely upon this written offer to purchase, he failed to make a case upon a contract in writing as there is nothing in the written instrument showing the acceptance by the owner.

The court, therefore, erred in submitting the case upon the theory that there was a contract in writing to pay O'Donnell.

■ The ground assigned by the trial court for granting a new trial was not sufficient, but, as stated, the defendant in his motion for a new trial and on this appeal also raised the point which we have considered above and this was sufficient to support the order for a new trial. Under such circumstances the order granting a new trial should be affirmed. Schroeder v. Rawlings, 344 Mo. 630, 127 S.W.2d 678; Engleman v. Railway Express Agency, 340 Mo. 360, 100 S.W.2d 540.

It is the recommendation of the commissioner that the order of the trial court granting a new trial be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The order of the circuit court granting a new trial is accordingly affirmed.

ANDERSON, P. J., and RUDDY, J., concur.