**COMMERCE TRUST COMPANY,**
**Plaintiff-Respondent,**

v.

**Ronald HOWARD et al., Defendants-**
**Appellants.**

**No. 53020.**

Supreme Court of Missouri,
Division No. 1.

July 8, 1968.

FRANK W. HAYES, Special Judge.

The parties will be referred to as appellants and respondent. The respondent existing under the laws of Missouri and authorized to do business in the State of Kansas. The appellants are residents of Pulaski County, Missouri. The Overland Park Motor Center Company, Inc., is engaged in the business of buying, selling, financing and leasing automobiles in Overland Park, Kansas.

Mr. W. A. Morgan was the principal stockholder and manager of the Overland Park Motor Center Company, Inc. He and appellant Howard had known each other all their lives. Mr. Howard was in the neon sign business in Greene County, Missouri, and adjoining counties. The parties had not seen each other for several years and in 1963 or 1964, Mr. Morgan stopped to see Mr. Howard while on his way to Kansas City to enter the automobile business. Later Mr. Morgan contacted Mr. Howard and he and Mr. Howard went to respondent's bank and discussed with Mr. Osterman of the Installment Loan Department the question of the appellants' signing a guaranty agreement for Mr. Morgan. Negotiations resulted in Mr. Kelly, the then manager of Installment Loan Department of respondent, extending a line of credit to the company. Respondent was to make (1) floor plan financing of inventory, (2) demonstrator car loans and (3) loans on leased vehicles.

The appellants admit signing the guaranty. It is set out in full (despite its length) because its exact terms are very material.

Milton C. Clarke, Roy P. Swanson, Kansas City, Arthur B. Cohn, Waynesville, for respondent, T. Alan Peschka, Swanson, Midgley, Jones, Eager & Gangwere, Kansas City, of counsel.

J. W. Grossenheider, Lebanon, for appellants.

"TO COMMERCE TRUST COMPANY OF KANSAS CITY, MISSOURI:

"The undersigned hereby request you to give, and continue to give, Overland Park Motor Center Conpany, Inc., (hereinafter styled the 'borrower') from time to time, as you may see fit, financial accommodations and credit, and in consideration of

the sum of one dollar, and other valuable considerations, the receipt of which is hereby acknowledged, and of financial accommodations and credit heretofore given or which may hereafter be given by you to said borrower, the undersigned hereby guarantee and promise and agree to make prompt payment to you, as they severally mature, of all overdrafts of said borrower, of all loans made, or which may be made by you to said borrower, of all moneys paid by you for the use of account of said borrower, and of all notes, acceptances and other paper which have been or may be discounted for, or at the request of said borrower, whether made, drawn, accepted, endorsed or not endorsed by said borrower, and whether endorsed with or without recourse, and of any and all other obligations, of every kind and character, now due or which may hereafter become due from said borrower to you, howsoever created, arising or evidenced, and also of any and all renewals or extensions of any of the foregoing, regardless of other collateral now held by you, or which you may hereafter acquire, as additional security to any or all of the indebtedness of said borrower.

"It is understood that extension of time payment, or the renewal of such indebtedness shall not in any way impair the liability of the undersigned hereunder, and that the undersigned will keep posted as to all matters pertaining to this guaranty without notice from you.

"When any such overdrafts, loans, discounts, or other paper, or obligations, or any renewal or extension thereof, shall become and remain due and unpaid, the undersigned will, upon demand, pay the amount due thereon.

"These presents constitute a continuing promise and agreement and shall apply to and cover any and all such overdrafts, loans, discounts, or other paper, or obligations, now or hereafter existing, and to any and all renewals or extensions thereof, made, discounted or created prior to notice in writing served upon your president, any one of your vice-presidents, your secretary, cashier, or treasurer, that the undersigned will not be liable upon any such overdrafts, loans, discounts or other paper or obligations made, discounted, or created, after the receipt of such notice.

"Before proceeding hereunder against any of the undersigned, resort need not be made by you to collateral security held for said indebtedness, nor need you to exhaust your remedy against said borrower, nor against any other signer to this guaranty.

"Notice of the making, renewing or extending time of payment of any such overdrafts, loans discounts, or other paper or obligations, and of demand, protest, and notice of nonpayment thereof, and of notice of acceptance hereof, are expressly waived.

"If this guaranty be executed by more than one signer or all obligations hereby created, and all agreements herein contained shall be the several obligations and agreements of each of the undersigned, but at your option any or all of the same may be enforced against any or all of the undersigned jointly."

The evidence discloses that after April 7, 1964, the time the guaranty was executed, the Overland Park Motor Center Company, Inc., became indebted to respondent, under the three finance plans, as follows:

| | |
|---|---|
| Plan A, Floor Plan Financing | $19,821.72 |
| Plan B, Demonstrator Car Financing | $35,096.00 |
| Plan C, Leased Car Financing | $92,754.92 |

On February 11, 1965, Mr. Osterman, at Mr. Morgan's request, wrote a letter of release to appellants releasing them from liability under Plan A as the amount had fallen under $50,000, as agreed between them. This left owing the amounts under Plans B and C.

Suit was instituted by respondent on December 22, 1965, on the guaranty in the Circuit Court of Pulaski County, after demand for payment. The defense of appellants was that the release of February 11, 1965, was a *complete release* of the appellants and not just a release of the debt under Plan A. The release is as follows:

"Dear Mr. and Mrs. Howard: In line with Mr. Morgan's request, we are, as of this date, relieving you and your wife from any liability connected with the floor plan of Overland Park Motor Center. Very truly yours, G. L. Osterman, Assistant Vice-President."

Appellants further contend that there was mutual mistake in that the entire guaranty was to be ended when the floor plan "A" liability ceased and that such provision was mistakenly omitted from the guaranty. Trial was held before a jury. The jury returned a verdict for the appellants. The trial court, upon motion of respondent, set aside verdict in favor of appellants on the grounds that question of mutual mistake and release is a question of law for the court, that verdict of jury is without support of evidence and that verdict was contrary to the law. The court then sustained respondent's motion for directed verdict against appellants (a) on demonstrator liability for $35,096.00 and (b) on lease car liability for $92,754.92, total $127,850.92. From these adverse rulings appellants appeal.

Appellants contend that the trial court erred in setting aside the verdict of the jury in their favor and directing a verdict for respondent. The evidence disclosed that appellants executed and delivered to respondents the written guaranty in question, that respondent accepted said guaranty, that repondent loaned money to Overland Park Motor Center Company, Inc., in reliance on said guaranty and that said company failed to pay when due the sums loaned to it. The guaranty provides that notice of acceptance of the guaranty is expressly waived by appellants.

Account cards of respondent were introduced without objection to show the loans and amounts due on loans made by respondent in connection with demonstrator car loans and leased car loans made by respondent to Overland Park Motor Center Company, Inc., after the date of appellants' guaranty. The transactions shown on the account cards for demonstrator car loans and leased car loans, in each instance, were supported by retail installment contracts or chattel mortgages and promissory notes. These business records were admitted into evidence without objection. So also was certain memorandum, prepared and identified by Mr. Circle, in course of his duties with respondent, analyzing and summarizing the amounts due on each type of financing covered by the guaranty. The respondent's evidence was not contradicted nor denied by appellants. The appellants did not dispute the fact of the indebtedness or the amount thereof.

One defense of appellants was that the guaranty was the result of a mutual mistake. There is no evidence herein to support such contention. Nor is the guaranty agreement ambiguous in any respect. There was nothing to submit to the jury as to the meaning of the guaranty. Its construction was a matter for the court. The rule is laid down in National Corporation, a Corporation v. Allan, Mo. App., 280 S.W.2d 428, 432, where the court says:

"[2, 3] Where the language of the contract on its face is not clear or is ambiguous, and resort to extrinsic evidence is necessary, if such evidence be conflicting, or, if not conflicting, different conclusions might reasonably be drawn therefrom, the construction of the agreement is for the jury under proper instructions from the Court. But where a contract is clear and unambiguous on its face, or where there is no real conflict of evidence upon any of the essential facts properly to be considered is construing the contract, and the true meaning of the words used is made clear

by such evidence, it becomes the duty of the Court, and not the jury, to construe it. Keyes Farm & Dairy Co. v. Prindle, 249 Mo. 600, 155 S.W. 391; McFarland v. Gillioz, 327 Mo. 690, 37 S.W.2d 911; Ewing v. Von Nieda, 8 Cir., 76 F.2d 177; Geoghegan Sons & Co. v. Arbuckle Bros., 139 Va. 92, 123 S.E. 387, 36 A.L.R. 399; Straus v. Kazemekas, 100 Conn. 581, 124 A. 234."

Also the same rule is announced in O'Donnell v. Epstein, Mo.App., 280 S.W.2d 462, l.c. 465, as follows:

"[2] Plaintiff chose to rest his entire case upon the paper designated Exhibit A and captioned 'Offer to Purchase'. This he does upon the theory that it places him in the position of an agent employed to sell the property and consequently entitled to a commission upon producing a purchaser ready, able and willing to buy. The contract, however, is in plain words, the meaning of which is generally understood. Therefore the construction of it is a matter of law for the court and not the jury. Ross v. St. Louis Dairy Co., 339 Mo. 982, 98 S.W.2d 717; Belt Seed Co. v. Mitchelhill Seed Co., 236 Mo.App. 142, 153 S.W.2d 106; Keyes Farm & Dairy Co. v. Prindle, 249 Mo. 600, 155 S.W. 391."

Nor did the Court err in refusing appellants' offer of evidence to vary the terms of the guaranty by proving conversations *prior* to the execution of the guaranty. The guaranty is not ambiguous and such evidence was merged into the guaranty and was not admissible. As said in Industrial Bank & Trust Company v. Hesselberg, Mo., 195 S.W.2d 470, l. c. 474:

"[13, 14] As noted supra, the instrument guaranteed the obligations of Motor Company arising out of (a) notes, contracts, or other choses in action purchased, the aggregate total of the outstanding balances of which should 'at no time exceed $1,500.00'; and it is plain that payment of loans (b), (c) and (d) was guaranteed without regard to amount, but the loans guaranteed to be paid were limited as to number. Parol evidence was admitted by the referee tending to show that, in the negotiations antecedent to guarantors' signing of the instrument of guaranty, appellant Hesselberg, guarantor, undertook to limit the extent of his liability and thought his liability under the whole instrument was limited to the sum of $1,500. Although the evidence was admitted, it is seen from the referee's report that the referee excluded this evidence from consideration. We hold the referee correctly refused to consider such parol testimony. No imperfection or ambiguity appears in the language of the instrument as to its terms relating to limitation of the amount of guarantors' liability. Once parties have agreed and the terms of the agreement are, by the parties, embodied in plain, unambiguous, written document monumenting their agreement, prior parol negotiations are of no legal significance and cannot be considered for the purpose of showing the terms of the agreement were different from those plainly expressed in writing. Sol Abrahams & Son Const. Co. v. Osterholm, Mo.App., 136 S.W.2d 86; Vol. IX, Wigmore on Evidence, 3d Ed., § 2425."

See also Davison v. Rodes, Mo.App., 299 S.W.2d 591, where it is said at 593:

"[2] Where parties have reduced their agreement to an unambiguous writing, the courts, through application of the parol evidence rule, have quite uniformly held that in the absence of fraud, duress, mistake or mental incapacity, oral testimony may not be received or considered, thereby substituting a new and different contract. This rule is one of substantive law and not a rule of evidence. 32 C.J.S. Evidence § 851, p. 784; Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817."

Appellants contend that when its floor plan obligations were reduced to $50,000.00 or less that its guarantee would terminate in full. There is no such provision in the guaranty agreement. The respondent did three types of financing for appellants, to wit: (1) floor plan fi-

nancing of inventory cars, (2) financing of demonstrator cars and (3) financing of leased cars. On February 11, 1965, Mr. Osterman, Assistant Vice-President of respondent, wrote to appellants that at request of Mr. Morgan, the respondent was relieving them from any liability connected with *"the floor plan of Overland Park Motor Center."* This language is clear and unambiguous. By no stretch of the imagination can this release be enlarged to include other types of financing nor to cancel the entire guaranty agreement. This release is clear, plain and definite and is limited to "floor plan" financing. Nothing in the guaranty agreement or in the release supports appellants' contention. The interpretation of this release was for the court and not the jury and the court properly refused Appellants' Instruction No. 6 which would have submitted this issue to the jury.

Appellants contend that the court erred in directing verdict against them and in entering judgment in favor of respondent and against them in the sum of $127,850.92.

■ The record shows that appellants admit executing the written guaranty, that it was delivered by them to respondent, that they waived notice of acceptance of the guaranty and that demand was made. The amounts loaned by and due respondent under each type of loan was proved by documentary evidence. Respondent's business records showed amount of loan and each transaction was supported by original retail installment contract or chattel mortgage and note executed by Overland Park Motor Center Company, Inc. These records showed how much was owing respondent and that the indebtedness was not paid. *Appellants admitted that they knew nothing about the transactions between the Motor Center and the respondent.* The oral testimony of respondent was generally confined to identifying the documentary evidence, the authenticity and correctness of which are unquestioned. Appellants did not contradict or refute any part of the

respondent's case. Their defense was that the letter of February 11, 1965, from Mr. Osterman (Plaintiff's Exhibit 11) to them, relieving them from any liability in connection with the "floor plan," relieved them from all liability under the guaranty and that such provision was mistakenly omitted from the guaranty and that these issues were jury questions. We have already determined that those issues were for the court to decide and were not jury issues. Such being true, there is no question of fact left in the case for the jury to decide and upon the questions of law the jury has no right to pass. There is no defense shown by the record and the trial court properly directed a verdict and judgment in favor of respondent.

■ The law with respect to directing a verdict for the party having the burden of proof is well stated in Curry and Company v. Hedrick, Mo., 378 S.W.2d 522 at 531:

" 'It is a generally accepted rule in this state that a verdict may not be directed in favor of the proponent, that is the party upon whom the law casts the final burden of proof. * * * There is, however, a well-recognized exception to the rule. If the opponent, that is the party not having the burden of proof, admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him, and if the proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned, and if such proof establishes beyond all doubt the truth of facts which as a matter of law entitled the proponent to the relief sought, and such proof is unimpeached and uncontradicted, the proponent will be entitled to a peremptory instruction. This is upon the theory that there is no question of fact left in the case and that upon the questions of law involved the jury has no right to pass. * * *' Rogers v. Thomp-

son, 364 Mo. 605, 265 S.W.2d 282, 287; Prevost v. Wilkin, Mo.App., 358 S.W.2d 417 [1, 2]."

In Latta v. Robinson Erection Co., 363 Mo. 47, 248 S.W.2d 569, where the suit was on notes and defense was fraud in procuring execution of notes, verdict was directed in favor of plaintiffs, the court (Mo. Banc.) saying, l.c. 577:

"[4–6] The execution, delivery and non-payment of the notes was admitted and the notes were offered in evidence. The defendants failed to offer any substantial evidence in support of their affirmative defenses. The court, therefore, should have directed a verdict for plaintiffs for the full amount due on the notes. Allison v. Tucker, Mo.App., 170 S.W.2d 963. In such situation errors if any in the instructions are wholly immaterial, since the issues of fraud and want of consideration should not have been submitted to the jury. O'Dell v. Dean, 356 Mo. 861, 204 S.W.2d 248, 249. Nor was the court authorized, under the record presented, to grant defendants a new trial on the ground of an excessive verdict. Rose v. Thompson, 346 Mo. 395, 141 S.W.2d 824, 830. The court abused its discretion in granting defendants a new trial. The order granting a new trial is reversed and the cause remanded with directions to enter judgment for plaintiffs and against defendants for the amount of principal, interest and attorneys' fees due on the notes.

"All concur."

The same rule is announced in Keeney v. Freeman, 236 Mo.App. 260, 151 S.W.2d 532, where it is said, l.c. 535:

"[5] In view of the whole record, we think the action of the trial court was proper. It was undisputed that defendant entered into the contract in question. The contract provided for an exclusive agency in plaintiffs; it also provided for a five per cent. commission to be paid to them by defendant if a sale should be 'made by any one' within the six months' period after the contract was made. It is conceded that the property was sold within the six months' period for $4,500. Hence the amount of the commission at five per cent. was $225, which was the amount of the verdict. In view of such a record showing no substantial evidence to support any kind of a defense, there was nothing for the trial court to do but direct a verdict for plaintiffs. Had the court permitted the case to go to the jury, it would have been useless procedure for the reason that, if the jury by any chance had returned a verdict for defendant, it would have been the duty of the court promptly to set such verdict aside."

We have carefully examined the record and authorities cited in appellants' brief and fail to find any basis upon which to convict the trial court of error in setting aside the jury's verdict in favor of appellants and directing a verdict in favor of respondent in the sum of $127,850.92. The issues of law were properly determined by the trial court and respondent's proof, which was unimpeached and uncontradicted, established beyond all doubt the truth of the facts which as a matter of law entitled respondent to a directed verdict. It is very unfortunate that appellants must suffer such a substantial judgment against them for the debts of another, but surely the appellants must have understood and appreciated the hazards of their undertaking at the time they executed the guaranty in question.

Affirmed.

All concur.